GLADNEY, Judge.
The plaintiff furnished the labor and materials required in the installation of the plumbing in defendant’s drive-in restaurant under construction at the intersection of Lakeshore Drive and Cross Lake Boulevard, near Shreveport. When payment therefor was refused, suit was brought to recover the sum of $1,869.54. The defendant has joined issue by denying the reasonableness of the charges and asserting the claim was not in accord with an oral contract between the parties. Coupled also with his answer defendant made demand in reconvention for $2,429.40 for damages allegedly incurred by reason of defective work by the plaintiff.
Following trial on the merits, judgment was rendered in favor of plaintiff in the amount of $1,846.44, and an award was made in favor of the defendant on the re-conventional demand for $1,093.22. The defendant has appealed and plaintiff has answered the appeal asking that the judgment be revised to conform to the full amount claimed by him.
The charges for labor and materials which comprise plaintiff’s claim are based on a “cost plus ten per cent” basis. The defendant in pleadings and testimony has asserted that there existed an oral agreement with Joe Ensminger, representative of plaintiff, fixing a definite price for the work. Ensminger denied any agreement and the parties to the suit now apparently concede that a contract for a definite price for the plumbing work has not been proven. The liability of the defendant, in our opinion, should be measured by application of the cost plus formula contended for by plaintiff. In reaching his decision the judge a quo resorted to the formula for the purpose of fixing a value for the materials and services supplied by plaintiff.
After carefully checking the evidence consisting of invoices, statements and time sheets tendered in support of plaintiff’s claim, we find the following items established as proper charges: materials, $1,074.-44; permits, $17; plumbers’ wages, $369; and laborers’ wages, $151.25. The items total $1,611.69 and are subject to an admitted credit of $23.10, thus leaving a net balance of $1,588.59, which sum with ten per cent added thereto makes a grand total of $1,747.45, and which amount, in our opinion, covers the reasonable cost of labor, materials, profit and overhead furnished to the job.
In connection with certain items embraced in the above charges, it is defendant’s contention that he should not be charged with the cost of services rendered to correct some of the plumbing work which was defectively installed, and for this he claims a credit of $88.38. Conceding, ar-guendo, that such services were performed solely in the correction of plumbing work which did not function properly, we still do *558 not feel at liberty to find the defendant should not be held liable for these charges. Unquestionably, we think, on a “cost plus” basis, some mistakes will be made on a job and certain work would have to be altered or changed so as to meet standard requirements. In the absence of an express agreement providing such repair work shall not be included in the basic cost of a “cost plus” undertaking, we think the item complained of has a proper place in the cost of the job.
Another contention of the defendant is that in one of the invoices covering a total charge of $210.29, plaintiff has included some of the same items making up a separate invoice for $145.05 for tying in the private sewer line to the city sewer line. We have carefully examined the record as to these charges and find no duplication. The item of $145.05 concerns labor and material used solely to tie in, whereas the other materials appear to have been used in bringing the private sewer line up to the point where the tie-in can be made. As a result of our findings we, therefore, have concluded that plaintiff is entitled to have judgment for $1,747.45.
Defendant’s reconventional demand is for damages caused by waste disposal backing up and overflowing the floor of defendant’s drive-in restaurant. The claim arises out of the following alleged acts of faulty plumbing work:
1. Failure of the plaintiff to connect the sanitary line running from defendant’s property to the city line, resulting in the building being flooded by the backing up of water and sewerage into the building.
2. That in pouring the cement into the grease trap, .that the cement had been poured to a depth above the opening of the drain pipe and that consequently the waste did not flow out through the drain pipe, but banked up and flowed backward into the building.
3. That one of the lines from the' commode in the building was blocked* with the original substance — oakum—that the plumber had failed to take out' at the time that the pipe was installed and that consequently water was flowing backwards due to the stoppage of the pipe.
4. That the joints in the grease trap1 had not been properly cemented allowing waste and water to seep out under the foundation of the building.
5. Damage to sheet rock partitions, baseboard and molding, by leaking pipes inside the partition.
From our examination of the record, we are of the opinion the above charges are fully supported by the evidence. The saiiR tary line was not connected with the city line until October 27, 1955, although the city line was completed on July 29, 1955. The defective grease trap was not re-* paired until November 6, 1955.
Under date of August 16, 1955, the as-* sistant city plumbing inspector purportedly made an inspection of the premises and delivered to plaintiff a certificate certifying that the plumbing work had been satisfac-. torily completed. The inspector testified as of that date that the tie-ip of defendant’s private line with the city main had been made. The evidence conclusively shows, however, that the witness was in error in this respect, and that, in fact, the tie-in with the city line had not been made and was not done until October 27, 1955.
The defendant opened his place of business on August 16th, after being advised that his plumbing work was completed. The employees of defendant, H. G. Townsend, who was installing certain equipment for the restaurant, and Q’Steen, testified as to the failure of the plumbing to properly function, and of the presence of damage to the building and supplies, and of foul odors which persisted for some time following the flooding of sewerage. Floyd M. Miller, Chief Sanitarian of Caddo Parish Health *559 Unit, testified as to the faulty construction ■of the grease trap and of the effect of the raw sewerage which backed up from the trap. He ordered the establishment closed and defendant testified it required considerable time to clean up the place. The raw sewerage invaded a walk-in cooler and contaminated food and supplies which had been placed on the floor pending proper storage. It appears that the plumbing did not properly function and caused trouble until about November 6, 1955.
We find that the premises were flooded from back-up sewerage which entered the floor of the walk-in freezer where foods, supplies, paper napkins, paper containers and other items were temporarily stored on the floor, causing damages and almost total loss to these items on August 20, 24 and 26, and September 3 and 4, 1955. We are also convinced that disagreeable and foul odors pervaded the premises and patio for a considerable period following the failure of the sanitary line to eliminate the sewerage, and even after the line was tied in on October 27, 1955, there was seepage and overflow from the grease trap which was repaired by plaintiff on or about November 6, 1955.
The evidence establishes beyond any reasonable doubt that according to custom in the plumbing trade, the responsibility for tieing in a private line with the city main is the responsibility of the plumber on the job. City officials testified that under no circumstances will the city tie in a private line with its street main.
In our opinion it was gross negligence for plaintiff not to keep himself advised as to the time of completion of the city main and, further, he should not have under any circumstances permitted defendant to utilize the plumbing until he was sure that such plumbing was tied in with the city main. Some damage unquestionably was caused by the defective grease trap, the blocking of a line by improperly placed oakum and the leakage of pipes in the partition wall, but undoubtedly plaintiff’s failure to tie in the sewer line was the major cause of the damage sustained by the defendant.
The defendant lists the damages claimed in his reconventional demand, as:
“(a) Loss of profits for the months of October and November, 1955, at $300.00 per month $600.00
“(b) Damage caused to food supplies, paper napkins, paper containers, cups and other items due to flooding of the premises on August 20, 24, and 26, 1955, and on September 3 and 4,1955 $789.40
“(c) Loss to the patio and cost of prospective replacement $300.00
“(d) Nuisance created about the premises due to the noxious and unpleasant odors $750.00
“(e) Damage to sheet rock partition, baseboard and mould-ing by leaking pipe $ 90.00
Total $2,429.40
In allowing to the defendant damages in the sum of $1,093.22, obviously the judge a quo recognized plaintiff’s partial liability for items enumerated (b), (c) and (e), which items, however, actually total $1,179. It is clear the trial judge did not recognize as proven the other items of defendant’s claim, (a) and (d), embracing loss of profits for which $600 was claimed, and $750 allegedly due for nuisance created by the obnoxious and unpleasant odors. With respect to the items approved by the court, amounting to $1,093.22, it is evident that some deduction was made by the court for failure to prove the entirety of the loss claimed for supplies, amounting to $789. In attempting to prove this item the defendant offered in evidence his original invoices, but when the supplies were ordered destroyed as being contaminated by the Caddo Parish Health Officer, O’Steen did not take a detailed inventory of the items disposed of pursuant to the instruc *560 tions of the Health Officer. Pie testified that each day depletions in his inventory were refilled and that from day to day his inventory would not vary by $100. It is admitted, of course, that at the time of the flooding some of the food and supplies had been consumed in the business operations and the inventory had been to some extent depleted. We assume that the amount deducted by the court was intended to offset this deficiency and we think properly so. The amount awarded for these items, which we think were substantially proved, seems proper and we approve of it.
We are of the opinion, however, that some damage should be allowed for the offensive odors which resulted from the overflowing raw sewerage and apparently persisted during the busy periods of defendant’s business. It is difficult to conceive of anything which would have a more detrimental effect upon the business of selling food than such persistent unpleasant odors. The defendant testified that as a result of such odors caused from the settling of sewerage underneath the patio, he was unable to use that portion of the premises. It is further testified that approximately one hundred gallons of disinfectant were used in an attempt to sterilize and rid the premises of the disagreeable odor. We, therefore, find defendant is entitled to damages which we fix at $350.
Defendant strenuously argues that the sum of $600 should be allowed for loss of profits at the rate of $300 per month for the months of September and October. In order to prove this item defendant tendered his profit and loss sheets of his business and furnished testimony indicating that the weather was good during the period of time when the business allegedly suffered by reason of the defective plumbing. It is, of course, a difficult matter to prove that customers of the restaurant have failed to patronize it because of such a condition as 'occurred in the instant case and we find that defendant has failed to prove such a loss of business and • resulting profits through the evidence tendered. Therefore, we are of the opinion that this item of damages was properly disallowed by the trial court.
In consequence of our findings we have concluded that the judgment in favor of the defendant, the plaintiff in reconvention, should be increased by the sum of $350.
It follows from our findings herein as above set forth, that the judgment from which appealed should be amended by awarding to plaintiff the sum of $1,747.45, and to the defendant the sum of $1,443.22, and as so amended the judgment is affirmed in all other respects. The costs of this appeal shall be taxed against plaintiff and other costs assessed as provided in the judgment from which appealed.