CHASEZ, Judge.
In November of 1965 Mr. Paul G. Char-bonnet, Jr., (Charbonnet) plaintiff-appel-lee, a licensed architect and contractor, entered into a verbal contract on a cost, plus percentage of cost, or “cost-plus” basis with Dr. and Mrs. Alton Ochsner, Jr. (Ochsner) defendant-appellant, to repair hurricane damage to the Ochsner home. This work, referred to as Phase I, was apparently done to the satisfaction of the Ochsners and Charbonnet was paid $16,-742.63.
A short time thereafter Ochsner and Charbonnet entered into another verbal contract on a similar “cost-plus” basis under which Charbonnet was to make certain alterations and renovations in the Ochsner home, (Phase II). A floor plan showing the proposed alterations was prepared by Charbonnet and apparently approved by Ochsner. No specifications were drawn.
In order to apprise the Ochsners of the approximate cost of the work in Phase II, an estimate totaling $28,428.00 was submitted to them on, July 11, 1966. The estimate included 15% as Charbonnet’s profit, but was not itemized. It only listed figures showing the cost of each type of work.
As the work progressed numerous additions and changes were made which naturally increased the costs. It became apparent that the total cost would run in excess of the original estimate. On January 25, 1967 Ochsner received a bill for $32,526.30 and the job was not yet complete. Ochsner objectéd to the bill and on February 27, 1967 was furnished with an itemized list of these “extras” which total-led in excess of $10,000.00. Ochsner felt that most of the items charged as extras should have been included in the original estimate.
It was not until October 25, 1967 that Dr. Ochsner and Charbonnet met to discuss the situation. At this meeting the two parties entered into an agreement. A list was compiled of items of repair remaining undone. Ochsner agreed to pay Charbonnet $19,-000.00 if the items on the list were completed to his satisfaction. This Charbonnet agreed to do. On December 4, 1967 Ochs-ner advanced Charbonnet $5,000.00, leaving a balance due of $14,000.00.
*88 On the list of things to be done, the major bone of contention is what repairs were to be made to the upstairs left rear bedroom.
The work was not done to Ochsner’s satisfaction and he refused to pay. Char-bonnet then brought suit to recover $18,-745.02 from the Ochsners; and later by supplemental petition the amount was increased to $19,270.66. The Ochsners answered the petition and filed a reconven-tional demand asking for the return of the $5,000.00 they had advanced to Charbon-net under the agreement of October 25, 1967.
From a judgment in favor of Paul G. Charbonnet, Jr. and against Dr. Alton Ochsner, Jr. for the sum of $14,000.00, together with legal interest from date of judicial demand and for all costs, and dismissing his reconventional demand, Dr. Ochsner entered this appeal. (The suit as agáinst Mrs. Ochsner was dismissed because the trial judge found that there was no evidence to indicate that the work was not a community obligation for which Dr. Ochsner was solely responsible. There has been no appeal from this part of the judgment which is final.)
The two major questions involved herein are: (1) Whether there was a compromise agreement entered into between Ochsner and Charbonnet, and, (2) if there was an agreement, who was to pay for the corrective work to be done since this was a “cost-plus” contract.
Ochsner has argued to this court that there was in fact no compromise or settlement because there was no meeting of the minds between Ochsner and Charbonnet. He urges that with respect to the repair to be done to the upstairs left rear bedroom, he thought the foundation should be “shored up” to prevent any further sinkage, and Charbonnet did not think shoring up was necessary. A more detailed discussion of repair to the bedroom will follow below. For the moment, suffice it to say that Ochsner’s argument that there was no compromise or settlement is untenable for the reasons which follow.
As was previously stated, Ochsner and Charbonnet met at Ochsner’s home on the night of October 25, 1967 for the purpose of discussing the problems they were having. The net result of the meeting was that Charbonnet agreed to do certain corrective work and Ochsner agreed to pay $19,000.00 therefor.
It is of course basic that a compromise must be in writing. LSA-C.C. art. 3071. Although a compromise must be in writing there is no sacrosanct form which must be followed. Bonnecaze v. Hamrick, La.App., 221 So.2d 638 (4th Cir. 1969); Thompson v. Kivett & Reel, La.App., 25 So.2d 124 (1st Cir. 1946), and that it is not necessary that everything intended to be compromised be in one document, Karl Hansen Co. v. Beekman, 16 La.App. 112, 132 So. 799 (Orleans, 1931).
The agreement between Ochsner and Charbonnet was confirmed in writing. On October 26, 1967, the next day, Char-bonnet sent Ochsner a document entitled “Revised Statement as per agreement,” which showed a new balance due of $19,-000.00.
Dr. Ochsner confirmed the agreement in a letter to Charbonnet’s attorney. In the letter he made this statement: “I fully intend to pay Paul G. Charbonnet, Jr. when he has completed the job to my satisfaction as we agreed upon. * * * Based on some specific observations we had made, he did reduce the total bill by $933.00 and I did agree to pay the remaining $19,000.00 he requested, with the understanding that a partial payment would first be made (I sent him $5,000.00) and the remainder of the payment would be given him after the following had been finished or corrected to my satisfaction * * * ”
In Ochsner’s answer and reconventional demand he made the following allegations:
*89 10.
“That Ochsner challenged and questioned several facets of the charges, which led to a meeting between Ochsner and Charbonnet on October 25, 1967, at which time agreement was reached that the total amount of $19,000.00 would be due, owing and payable to Charbonnet provided corrective and remedial work was done, which corrective and remedial work in the opinion of Ochsner reflected a value of $19,000.00.
‡ * * * * *
14.
“That the agreement of October 25, 1967 was in compromise and settlement of the dispute between parties as to work done, and the figures of Charbonnet were accepted by Ochsner without audit or examination; therefore, Ochsner reserves the right for a full audit of the costs of the work should there be any resolution of the matter which is not totally consistent with the contractural agreement reached (in compromise and settlement) on October 25, 1967.
“Mr. Charbonnet contends that his agreement to accept $19,000.00 as the amount due him was conditioned on the fact that the $19,000.00 would be immediately paid to him. This is denied by Dr. Ochsner. The Court is of the opinion that while Mr. Charbonnet may have contemplated that payment would be made to him promptly, the agreement which Mr. Charbonnet confirmed by his statement of October 26, 1967, (See Exhibit P. 15) makes no mention of this fact. In the statement it is clearly shown that the ‘Balance due at this time’ is fixed at $19,000.00, but there is no mention of the fact that the ‘balance due’ was payable at that time, and thereafter Dr. Ochsner paid the sum of $5,000.00 which was accepted by Mr. Charbonnet without apparent protest, leaving a balance due of $14,000.00.”
As can be seen from the above statements, there was a compromise settlement between Ochsner and Charbonnet. Therefore any disputes as to overcharges and overlap of work which occurred before the agreement of October 25, 1967 are of no consequence and the court a quo was entirely correct in limiting evidence and testimony to a showing of whether Charbonnet performed the additional work that he agreed to under the agreement.
The trial court gave well written reasons for his judgment which succinctly state the case and with which we are in complete agreement. We, therefore, adopt in part his reasons as our own.
“There is no doubt that as part of the agreement to settle the amount in dispute between the parties, Mr. Charbonnet agreed to correct certain items of workmanship which Dr. Ochsner felt to be faulty. The question of what items were to be corrected appears to be in dispute. Mr. Charbonnet attached to his statement a list of the vari-our items which he proposed to correct.
“In a letter to the attorney for Mr. Char-bonnet (Exhibit P. 18) dated February 14th, 1968, Dr. Ochsner confirmed his agreement to pay Mr. Charbonnet the sum of $19,000.00 (reduced, by payment of $5,-000.00, to $14,000.00), and in the letter Dr. Ochsner set forth a list of those items which he understood Mr. Charbonnet was to correct at Mr. Carbonnet’s expense.
“Although the letter from Dr. Ochsner to Mr. Trapolin includes several items which were not on the list which Mr. Char-bonnet furnished to Dr. Ochsner, it would appear that there is very little dispute regarding those items included in the list of Dr. Ochsner, as set forth in his letter to Mr. Trapolin, except for the item listed on page 2 of the letter, as follows:
“ ‘Back Bedrooms
1. Shore up foundation to prevent the present sinking of the floors between the two rooms, which was preventing *90 closure of the closet doors and the doors leading from the rooms, and was causing cracking of plaster in bedrooms and closets.’ ”
2. “ ‘Repair cracks in walls and closet.’ ”
“With reference to all other items appearing in the letter of Dr. Ochsner, the Court is of the opinion that Dr. Ochsner has not shown, by a preponderance of evidence necessary to substantiate his position, that corrective work has not been done, or that when attempts were made to do the corrective work those attempting to do so were not prevented from so doing by Dr. Ochsner or Mrs. Ochsner, as testified to by witnesses submitted by Mr. Charbonnet.
“As heretofore stated, the first question for determination is whether there was a binding agreement as to the amount due. The Court is of the opinion that both plaintiff and defendant are bound by the agreement which they reached in October of 1967 and later confirmed by each, and that accordingly Mr. Charbonnet is not entitled to recover more than the sum of $14,000.00.
“In filing the suit Mr. Charbonnet claimed the sum of $18,745.02 and by supplemental petition the amount was increased to $19,270.66. On the trial of this cause Mr. Charbonnet attempted to justify the charges which would entitle him to be paid the sum of $19,270.66, and in turn Dr. Ochsner has attempted to force an accounting by Mr. Charbonnet of all items which made up the original charges as set forth in Mr. Charbonnet’s petition and supplemental petition.
“The Court is of the opinion that Dr. Ochsner is not now entitled to an accounting. The prayer of the answer of Dr. Ochsner does not pray for an accounting. Counsel for Dr. Ochsner relies upon his allegation in Article 14 of his answer, in which he states that ‘Should there be any resolution of the matter which is not totally consistent with the contractual agreement reached (in compromise and settlement) on October 25, 1967’ then Dr. Ochs-ner reserves the right to have a full audit of the costs of the work. Inasmuch as the Court holds that the agreement of October 25, 1967 is binding upon both parties thereto, and that both parties agreed that the total due was $19,000.00 (reduced to $14,000.00 by payment of $5,000.00), there is no inconsistency ‘with the contractual agreement of October 25th, 1967.’ Therefore, Dr. Ochsner is not entitled to have an audit at this late date, after having entered into the agreement of October 25, 1967. Nor can Mr. Charbonnet (as heretofore stated) claim any sum other than the agreed sum of $14,000.00.
“Although Dr. Ochsner’s answer refers to the agreement as one in ‘compromise and settlement’ no such statement is made by either party when they confirmed the agreement of October 25, 1967. At that time Mr. Charbonnet claimed the sum of $19,933.00, and he agreed to reduce this sum of $19,000.00, and thereafter Dr. Ochsner paid $5,000.00, reducing the balance due to $14,000.00, as Dr, Ochsner acknowledged in his letter to Mr. Trapolin in February of the following year.
“Even if the amount had been fixed as a compromise it would not change the fact that the agreement to settle at that figure was binding upon both parties.
“ ‘A compromise has, between the interested parties, the force of a thing adjudged.’ ” Adíe’ v. Prudhomme, 16 La. Ann. 343.
“ ‘It is settled policy of the law that persons should when possible settle their differences by compromise and when differences are thus composed, the agreement takes on the character of the thing adjudged.’ ” LSA-R.S. 23:1271, 23:1273; Civ.Code art. 3078. — Walding v. Caldwell Bros. & Hart, 193 So. 501.
“It is clear that Mr. Charbonnet substantially completed the work which he was engaged to perform. As a matter of fact, except for those minor items which the Court referred to hereinabove as not hav *91 ing been proven to be uncompleted, and except for the dispute which has arisen as to the matter hereinafter discussed, the work undertaken by Mr. Charbonnet, according to the only plans which were agreed upon, has actually been entirely completed.
“Therefore, based upon the jurisprudence set forth in the case of Airco Refrigerator Service, Inc. vs. Fink, [242 La. 73] 134 So.2d 880 (and lately affirmed in the case No. 3425 of the docket of the Fourth Circuit Court of Appeal, Carrie Y. Franklin vs. Robert Edw. Mackie [221 So.2d 360]), in which it has been held that:
“ ‘A contractor who has substantially performed a building contract is entitled to file suit thereon to recover the contract price, less whatever damages the owner may prove to be attributable to the breach.’ ”
It is the Court’s opinion that Mr. Char-bonnet is entitled to be paid the sum of $14,000.00 with legal interest from date of judicial demand, for the further reasons hereinafter set forth.
“The remaining question for determination, as first herein referred to as the second question for determination, is simply whether or not the contractor under a ‘cost-plus contract’ is obligated to ‘pay for his mistakes’ or whether this is an assumed risk of the owner who entered into such a contract, and who, in effect, must pay for the mistakes, if any, made by the contractor.”
Ochsner argues that Charbonnet is an independent contractor, worked “by the job” for a certain stipulated price (cost plus percentage), had control of the job and the men and that, therefore, under Civil Code articles 2762, 2768, 2769 and 2315 he is responsible for the damage caused by his acts and those of his men.
However, Louisiana jurisprudence recognizes that the owner is ultimately responsible for errors or mistakes made on a “cost-plus” contract. In Schroeter v. O’Steen, La.App., 94 So.2d 556 (2nd Cir. 1957) the court stated at page 558:
“Unquestionably, we think, on a ‘cost-plus’ basis, some mistakes will be made on a job and certain work would have to be altered or changed so as to meet standard requirements. In the absence of an express agreement providing such repair work shall not be included in the basic cost of a ‘cost plus’ undertaking, we think the item complained of has a proper place in the cost of the job.”
This case was followed by this court in the case of Delta Paving Company v. Woolridge, La.App., 209 So.2d 581 (4th Cir. 1967). See also Pennington v. Campanella, La.App., 180 So.2d 882 (1st Cir. 1965).
The trial court considered Char-bonnet as an independent contractor and still held that he was not liable for the mistakes. Anent this situation the Court a quo stated:
“However, although Mr. Charbonnet would be classed as an ‘independent contractor, nevertheless since he did not take ‘any chance of losing’ he could not be held to be accountable for any errors or mistakes, unless these mistakes were of such a character as to bring Mr. Charbonnet’s acts directly within the provisions of Article 2316. Even then, in view of the language of the Court in the case of Brasher vs. City of Alexandria, 213 [215] La. 887, 41 So.2d 819, wherein the Court stated:
“ ‘The general rule of law applicable to these facts are well settled. Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation because un-forseen difficulties are encountered.’ ”
it may be doubtful if the owner could hold Mr. Charbonnet responsible for ‘imprudence’ or ‘want of skill’ or even neg *92 ligence in doing the work. Having held that a contractor, working under a contract for a ‘fixed sum’, could not recover for unforeseen events or difficulties which might be encountered in the performance of the work, it would seem clear that the converse would be true, and that a contractor, being assured of a profit or gain — and not working under any fixed price contract — would be able to recover from the owner in the event of unforseen difficulties which might be encountered.
“It is obvious that if any of the work done by Mr. Charbonnet was done in an ‘unworkmanlike’ manner, as alleged by the defendant, then it would be necessary that that fact be proven (by Dr. Ochsner) by a preponderance of evidence. This, the Court feels Dr. Ochsner has failed to do. As hereinbefore stated, the only item on the so-called ‘punch list’ on which any serious claim for correction has been made is the matter of the cracks in the walls of the bedroom which is above an area which was converted on the lower floor. Both plaintiff and defendant produced an ‘expert’ witness. Their testimony is (as usual) contradictory as to each other, but it is the opinion of this Court that Dr. Ochsner has not proven by that preponderance of evidence which is necessary to maintain his contention, that the cracks in the bedroom wall, or the sinking or settlement of the structure, was caused by any lack of skill or imprudence or negligence on the part of Mr. Charbonnet or his sub-contractors or employees.
“It is the further opinion of this Court that in the absence of any showing that those other items on the so-called ‘punch list’ were due to any negligence or imprudence or lack of skill on the part of Mr. Charbonnet, he is under no obligation to remedy the conditions complained of unless on the same ‘cost-plus’ basis under which all of the work was done. In other words, unfortunate as it may be for an owner who enters into a ‘cost-plus’ contract, it would appear clear that the contractor is not liable for the costs of correcting his own mistakes. This is a risk an owner assumes in entering into such a contract.”
The trial court’s findings with regard to Charbonnet’s negligence or not were clearly ones of fact. Our own analysis of the record convinces us that there was no manifest error in any of the trial court’s findings and they will, therefore, not be disturbed by us.
We may further state that under the agreement Charbonnet agreed to inspect the upstairs left rear bedroom for sinkage and to correct it if it were sinking. He testified that he did inspect the area where the post had been removed and that in his professional opinion there were no structural defects to be corrected; that the only repairs required were the patching of the cracks which he labled as “expansion cracks” with plaster and repainting them. Acts of professional judgment cannot be considered as acts of negligence.
The reconventional demand of Ochsner’s was dismissed for the reason that the trial court found that Charbonnet had complied with the agreement of October 25, 1967, and that Ochsner owed the full amount of $19,000.00 less the $5,000.00 advanced or $14,000.00. The trial court was correct in dismissing Ochsner’s reconventional demand.
For the foregoing reasons the judgment in favor of Paul G. Charbonnet, Jr. and against Dr. Alton Ochsner, Jr. in the sum of $14,000.00, together with legal interest from date of judicial demand and for all costs and dismissing Ochsner’s reconven-tional demand is affirmed. Defendant-appellant to pay all costs of this appeal.
Affirmed.