246 So.2d 844

**Paul G. CHARBONNET, Jr.**

**v.**

**Dr. and Mrs. Alton OCHSNER, Jr.**

**No. 50713.**

March 29, 1971.

Rehearing Denied May 3, 1971.

F. D. V. de LaBarre, David L. Levy, New Orleans, for defendants-appellants-applicants.

Ivor A. Trapolin, New Orleans, for plaintiff-appellee-respondent.

DIXON, Justice.

The plaintiff, an architect and contractor, brought suit to recover the balance he claimed for certain remodeling work on defendant's residence. The defense set up in the answer was that certain of the work was defective, and the balance was withheld pending satisfactory correction and completion. Both plaintiff and defendant set up in the pleadings that an attempt was made to settle their differences; the plaintiff contended that the compromise amount was contingent on prompt payment by the defendant; the defendant contended that the compromise amount was contingent upon completion and correction of the work in a manner satisfactory to the defendant.

There was judgment in the district court for the plaintiff in the amount of $14,000. In a written opinion, the trial judge held that both the plaintiff and defendant were bound by the agreement they made on October 25, 1967 to settle their differences for $19,000. (A partial payment was made shortly after October 25 by the defendant in the amount of $5,000, leaving the $14,000 for which the district court rendered judgment). The trial court further found that the defendant failed to prove either that there was substantial work to be completed, or that the damage complained of by the defendant was caused by the lack of skill or imprudence or negligence of the plaintiff.

The trial court found that the agreement made between the plaintiff and defendant in a conference on October 25 was "confirmed" in writing by the plaintiff in a letter or statement dated October 26, 1967, and "confirmed" by the defendant in a letter to plaintiff's attorney dated February 14, 1968. This finding was in spite of the fact that, continually throughout the trial, the attorneys for both the plaintiff and the defendant pointed out to the trial judge that there was no meeting of the minds between the plaintiff and the defendant, and that the "compromise" did not comply with the requirements of Civil Code Article 3071 which provides: "This contract must be reduced into writing." [1]

1. "There are certain requisites of a valid compromise, namely, form, capacity, consideration and acceptance. In regard to form, the Louisiana Civil Code specifically states that the compromise must be reduced to writing. The requirement of writing is peculiar to this type of contract, for a compromise in itself is an exceptional right. Therefore, the contract must be complete in itself, and nothing can be left to be established by parol proof. It is necessary, moreover, that both parties sign the instrument; otherwise, the agreement remains inchoate and ineffective. Since a compromise permits the parties to adjust their differences in a manner 'they agree on', it follows that no formal words are necessary in order to validate a compromise. The only essential concerning the matter of form which the Code requires is that 'the contract must be reduced to writing.' " Comment, 14 Tul.L.Rev. 284 (1940).

The Court of Appeal affirmed, holding that there had been a compromise settlement between the plaintiff and defendant. 236 So.2d 86. The Court of Appeal held that the trial court had not committed manifest error in finding that the defendant had failed to prove the plaintiff guilty of "unworkmanlike" performance, and had failed to prove that the faulty construction complained of by the defendant was caused by lack of skill or negligence on the plaintiff's part. The Court of Appeal found, in addition, that Louisiana jurisprudence placed ultimate responsibility on the owner for errors or mistakes made by the contractor on "cost-plus" contracts.[2]

■ The "compromise agreement" referred to in this case was never completed. It was not reduced to writing by the parties, as required by C.C. 3071, and the parties never did agree on the same thing. The contractor's testimony made it abundantly clear that his oral agreement to compromise was contingent on prompt payment. The defendant's testimony, and his position throughout the litigation, has been that he agreed to pay the $19,000 only if the plaintiff corrected certain deficiencies that had appeared in the work.

The trial court found that the statement sent by the plaintiff to defendant on October 26, pursuant to the conference of October 25, 1967, did not indicate that the plaintiff expected prompt payment, because it contained only the words "balance due at this time $19,000." The trial court said that "there is no mention of the fact that the 'balance due' was *payable* at that time." This seems to be a distinction without a difference. At any rate, plaintiff and defendant were then, and are still, in disagreement about what correctional work plaintiff was to do.

■ The "revised statement as per agreement" typed by plaintiff on October 26 and mailed to defendant, claiming the balance of $19,000 does not satisfy the codal requirement of C.C. 3071 that the "contract must be reduced into writing." Nor does the letter from defendant to plaintiff's lawyer, dated February 14, 1968. That letter demonstrates that the parties had not reached a meeting of the minds on October 25, 1967.

■ In brief plaintiff argues that defendant alleges in answer and reconventional demand a compromise and is bound, under C.C. 2291, by his judicial confession.

It is true that defendant alleged an agreement between Ochsner and Charbonnet. Defendant alleged the agreement was that $19,000 would be "due, owing and payable to Charbonnet" when certain correc-

2. Citing Schroeter v. O'Steen, 94 So.2d 556 (La.App., 1957); Pennington v. Campanella, 180 So.2d 882 (La.App., 1965); Delta Paving Company v. Wooldridge, 209 So.2d 581 (La.App., 1967).

tions and remedial work was done, and that Charbonnet failed to live up to his agreement.

Plaintiff in answer to reconventional demand admitted that plaintiff and defendant agreed to a settlement of $19,000, but denied the other allegations concerning the agreement.

The judicial confession "cannot be divided against him" (against the pleader), says C.C. 2291. Defendant further alleges in his reconventional demand that it would cost $19,000 to repair the bad work for which plaintiff is responsible. Plaintiff cannot "divide" defendant's answer, but must fairly construe the whole answer, and not merely those allegations which, considered alone and without the further allegations in the same pleading, might be construed against the pleader.

Although the parties made an effort to compromise, they did not reach an agreement, and did not put an end to their differences. Their principal difference was about what was to be done to correct a condition in "bedroom #4." The owner complained that doors that would not open and horizontal cracks in the sheetrock walls were caused by structural defects. The contractor called them "expansions," and offered to fill the cracks and trim up the doors. This, said the owner, would be merely repetitious, having been tried twice before, and would not prevent a recur-

rence. The owner adduced evidence to show that bedroom #4 was located over an old kitchen that had been removed and replaced with a patio. Certain exterior supports for the old structure had been removed and replaced with new supports in different places and numbers.

Plaintiff testified that $50.00 would cover the cost of repairs in the bedroom. Defendant's evidence was to the effect that the racking of the structure was due to changes in the distribution of loads and inadequate structural support, and would cost about $8,000 to correct.

The Court of Appeal, 236 So.2d 86, cites the three cases (noted in footnote 2) as establishing the jurisprudence "that the owner is ultimately responsible for errors or mistakes made on a 'cost-plus' contract."

■ We make no attempt here to announce any broad rule with reference to the relationship between the owner and contractor on cost-plus contracts. We need only to point out that plaintiff was not only a contractor. He is an architect. The case before us is not one in which an owner employs a craftsman to do certain remodeling around the house. What is presented in this case is a situation in which an educated and trained architect who designed certain changes in a residence was employed on a cost-plus basis because of his skill in planning, designing and super-

vising construction. The plaintiff is not a mere craftsman, and is not a mere contractor. The law does not place the liability for his want of skill or his negligence on the owner:

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." C.C. 2316.

See also C.C. 2762.[3]

The deficiencies in the defendant's house are manifest in one of the upstairs bedrooms designated by the litigants and witnesses as "bedroom #4." A sheetrock joint is the principal evidence of the difficulty. The defendant testified that the crack was twice repaired and was evident at the time of the trial.

This bedroom had been remodeled under what the parties referred to as "phase one" of the remodeling. Apparently, the parties had planned extensive remodeling work prior to Hurricane Besty in 1965. At any rate, following the hurricane, plaintiff undertook and completed certain repair and remodeling work. Plaintiff was paid for this work before he undertook the additional extensive remodeling. Bedroom #4 was part of the first phase. When the second phase got underway, some supports for the floor and wall of bedroom #4 were removed, and replaced by temporary shoring. During a spell of wet weather, one of the shoring members slipped, but was driven back in place by plaintiff's employees. The cracks in the wall of bedroom #4 first appeared on this occasion. The remodeling that followed resulted in a rearrangement of the supports for and around bedroom #4 and a redistribution of loads. A chimney was removed that might have had some effect on the situation.

The defendant produced expert witnesses to establish his defense that the remodeling job was defective because of bad planning and workmanship. An architect testified that the damage to bedroom #4 was a result of structural deficiencies caused by the remodeling. He examined the rafters in the attic above the bedroom and detected the evidence of movement by the appearance of new-looking light colored wood at the joints of the rafters and the collar braces. (Plaintiff did not ever make an examination of the attic). Defendant's architect witness also detected bowing of weather boards on the exterior of the wall involved, indicating to him racking of the structure. Although he did not testify in detail, defendant's architect estimated the cost of remedying the cause of the shifting wall to be $8,000.

3. "If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks."

It is to be noted, however, that this witness was not employed by the defendant until about three weeks before the trial. The defendant testified that he had employed another expert, an engineer who, according to defendant's testimony, found no deficiency in the foundation.

The defendant also produced a structural engineer. He verified the existence of major cracks in the sheetrock wall of bedroom #4 and concluded that either insufficient foundation or insufficient structural support from above, or both, caused the movement that caused the cracks. He also testified that anytime anything was moved from an old building, like the chimney in the one involved, there was a risk of movement, and that it would require major structural changes to eliminate the cause of the movement. This engineer testified as to more than one possible cause of the failure in the wall, but could not specify that any particular deficiency was the actual cause of the movement.

A fair appraisal of defendant's evidence leads to the conclusion that he carried the burden of making out a prima facie case. In going forward with the proof, the plaintiff, in rebuttal, also produced an expert in structural engineering. This witness had examined the house and found it to be typical for the area, and "in pretty good

shape." Among the other possible causes for the cracks in the bedroom wall, he named central heating and air conditioning, expansion of clays in the earth around the foundation, and structural shifting independent of the foundation. He found no signs of distress in the building. He noticed no unusual condition of the weather boarding and found no subsidence of load bearing columns forming the foundation for the overhang of bedroom #4.

Another witness testified about measurements made on the day of the trial, and found no substantial change in the level of the floor in the affected room.

■ We cannot find that the defendant has established his affirmative defense by a preponderance of the evidence. This he must do before this court can relieve him of the obligation of paying for the work for which he contracted on a cost-plus basis.

■ The defendant offered to prove that the plaintiff and his subcontractors charged too much. The trial judge refused to hear evidence on this subject, because the defendant had not pleaded this defense in his answer. The defendant, subsequent to the ruling of the trial judge, filed a written "proffer." [4] The "proffer" con-

4. "When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmis-

tained an argument that a sheetrock subcontractor and a painting subcontractor had charged several times the going market price for their work, and that Charbonnet had not held them to the performance of their subcontracts, and had furnished mechanics and laborers to assist the subcontractors, and in addition to all these expenditures, had added his surcharge. The defendant argued that he wanted to show "what kind of contractor he (plaintiff) was," and wanted to show that the plaintiff "was not a prudent contractor."

The ruling of the trial judge was correct. There are no allegations in the answer sufficient to support such evidence.

In his answer, the defendant stated that "Ochsner reserves the right for a full audit of the costs of the work should there be any resolution of the matter which is not totally consistent with the contractural (sic) agreement reached (in compromise and settlement) on October 25, 1967."

The defendant was entitled to see the plaintiff's figures, and to be certain they were correct. He was entitled to determine whether the expenditures claimed by the plaintiff actually were made. He was not, however, entitled to delay until another time this part of his defense.

In order for plaintiff to recover, it was necessary for him to prove the cost-plus contract, and to prove each expense incurred thereunder. The "costs" thus became an essential element of plaintiff's case. Until those costs were proven, plaintiff had not made out a prima facie case. Accordingly, the accounting was not a mere defense that could have been raised as a matter of law in the instant suit; the accounting was an essential element of *plaintiff's* case that he was required to prove as a matter of fact in order to recover. Since the issue of necessity was actually raised in the instant lawsuit, and was not merely a defensive matter that might have been raised, it is clear that even under the most liberal of the approaches to the doctrine of *res judicata* defendant effectually could not postpone or reserve unto a later time his right to controvert the accounting presented by plaintiff. See "Matters Which Might Have Been Pleaded," 2 La.L.Rev. 347 (1940); Louisiana Civil Code article 2286.

The Court of Appeal rendered judgment in favor of plaintiff, Paul G. Charbonnet, Jr., and against the defendant, Dr. Alton Ochsner, Jr., in the sum of $14,000, with interest and costs, and dismissed Ochsner's reconventional demand. Plaintiff did not

sibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.

"If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party to make a record in the same manner of any evidence bearing upon the evidence held inadmissible." C.C.P. 1636.

apply for writs from the Court of Appeal. For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed at the cost of defendant-relator.

McCALEB, C. J., and BARHAM, J., concur in the result.