SARTAIN, Judge.
This appeal concerns a suit on a contractor’s performance bond issued by Great American Insurance Company (Great American) which guaranteed certain of the obligations of Donnell Construction Company (Donnell), a now defunct Louisiana corporation, on various projects undertaken by Donnell.
Dunham Concrete Products, Inc., supplied materials allegedly worth in excess of $6,000 to several locations at which Donnell was doing construction work during the year 1968. When their current billing was not paid thereafter, preliminary collection efforts were made, but to no avail.
Prior to the month of March, 1969, Donnell became insolvent. Great American then hired a Mr. Gilbert L. Hampton, a Dallas, Texas attorney, apparently involved full time in bonding settlement matters, to liquidate and dispose of the various claims pending against it as a result of the Donnell projects it had bonded.
Mr. Hampton arrived in Baton Rouge in March of that year and set about representing the interests of Great American by attempting to settle claims on some sixty bonded projects, several of which involved amounts in excess of $100,000. In early November, 1969, it seems that Hampton was at the offices of Donnell in Denham Springs, Louisiana, when he was contacted by a Mr. George M. Hamilton, or some other Dunham employee, relative to the amounts owed that company. It was immediately obvious to Hampton that there was considerable uncertainty as to which of the numerous invoices presented by Dunham were on jobs bonded by Great American and which were not. In the days that followed, Mr. Hampton went through the Dunham bills presented to him and made an audit of them, classifying them as bonded, non-bonded, and in some instances unknown, jobs. He then decided that it would be impossible to accurately and positively determine exactly what amount was owed Dunham. In an effort to settle the entire liability of Great American to the plaintiff, however, he concluded that he would offer $3,755.53 in total settlement of all Dunham claims. He communicated this offer to Mr. Hamilton over the phone but no agreement was reached at that time, as the latter indicated that he *106 needed to review Hampton’s audit before making an acceptance. On November 18, 1969, Mr. Hampton mailed to Hamilton the audit as requested and included therein a written proposal containing these words :
“Dear Mr. Hamilton'—
“Confirming our telephone conversation, on behalf of Great Amer Ins Co we will pay $3755.53 in settlement of your claim against the Great Amer Bonds on Donnell.
“Attached is our list of invoices that appear to be on our bonded jobs.
Yours very truly
Gil Hampton”
The testimony as to the events transpiring thereafter is, in many ways, in conflict. Mr. Hamilton stated that, upon receiving Hampton’s audit, that he verified the figures, found that they came to within $60.00 of coinciding with his own, and that he then ordered an employee, Mrs. Patricia Michael, to communicate an acceptance by telephone to Hampton. He stated that, after some difficulty, she got Hampton on the phone and accepted the offer, but that the check never came. Thereafter, extensive telephone attempts to réach Hampton at his Dallas office failed.
Mrs. Michael verified this account of events, stating that she told Hampton of their acceptance over the phone in mind-December, 1969. Thereafter, when no payment was received, she called for him at least once a week and estimated that she must have made a total of approximately twenty calls without success.
No written acceptance of any sort was ever forwarded to Hampton, however, and he recollected that on the only occasion that he ever spoke to a female employee of Dunham, that she stated to him that his offer was insufficient. He positively stated that no acceptance of the offer was ever made to him.
The plaintiff’s suit, filed December 1, 1970, sought the recovery of the $3,755.53 as made in Hampton’s offer, but the pleadings specifically allege that this amount was due for materials supplied by the plaintiff on a project known as the Longfellow Drive Drainage Project bearing East Baton Rouge Parish No. 66-DR-CI-0114. This job was accepted by the City-Parish Government on November 22, 1968.
The defendants, thereafter, entered a plea of prescription, they contending that, in view of the provisions of LSA-R.S. 38:2247, the claim had prescribed one year from the acceptance of the Longfellow Drive project. That plea was overruled and, pursuant to trial on the merits, the district judge ruled for the defendants and dismissed the plaintiff’s suit. We affirm the judgment of that court.
“Nothing in this part shall be construed to deprive any person or claimant within the terms of this part of his right of action on the contractor’s bond which shall accrue at any time after maturity of his claim, which said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; . . . ”
We are cognizant of the provisions of Civil Code Article 3520 which provides for the interruption of prescription when the debt is sufficiently acknowledged by the debtor; however, the jurisprudence which has had occasion to interpret that article has established that such an acknowledgment must be clear and specific and expressive of an intent to interrupt the prescriptive period. In Marathon Insurance Co. v. Warner, 244 So.2d 353 (La.App. 2nd Cir. 1971), this applicable observation was made:
“Recognition of the mere existence of a disputed claim is not such an acknowl-edgement within the contemplation of LSA-C.C. Art. 3520 as will affect an interruption of the running of prescription. *107 This is particularly true in the instant case in view of the recital in plaintiff’s petition that ‘the contentions of St. Paul Fire & Marine Insurance Company have been denied, and are now denied by plaintiffs.’ It is well settled in the jurisprudence that within the intent of the aforesaid article of the code, the ac-knowledgement must be accompanied by or coupled with a clear declaration of intent to interrupt the prescription then running.”
We find that the notation which Hampton forwarded to Hamilton was not an acknowledgement sufficient to interrupt prescription, but was an offer to settle an unliquidated claim only. It evidences no recognition of a certain debt nor does it indicate an intention to interrupt prescription. We find, therefore, that the provisions of Civil Code Article 3520 have not been satisfied by the document at issue and that the claim prescribed one year from acceptance by the Parish authority, or on November 22, 1969.
Only a written acceptance of Hampton’s offer forwarded to him on or prior to that date would render this agreement enforceable. Counsel for the appellant has urged upon us the proposition that the acceptance of the offer could have been perfected by telephone and an enforceable contract entered into thereby. However, Civil Code Article 3071 contains these terms:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must be reduced into writing.”
In Charbonnet v. Ochsner, 258 La. 507, 246 So.2d 844 (1971), the Supreme Court of this state recently affirmed that a compromise agreement must be in writing, and, in so doing, made no distinction between those agreements affecting immovable property or otherwise. Although we are aware of prior pronouncements by this court to the contrary, see C & M Properties, Inc. v. R. B. Alexander, Inc., 219 So. 2d 229 (La.App. 1st Cir. 1969), we are, of course, bound by the latest ruling of that court. The judgment of the district court is, therefore, affirmed, all costs of this appeal to be paid by the appellant.
Affirmed.