509 So.2d 466 (1987)
John L. WALLACE, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Kenneth Lacaze, Defendants-Appellants.
No. 86-417.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Writ Denied June 5, 1987.
*467 Jackson B. Bolinger, of Forrest and Lopresto, Lafayette, for defendants-appellants.
Richard M. Sandefer, Lafayette, for plaintiff-appellee.
Before LABORDE and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge, Retired, Pro Tem.
The issues presented by this appeal are whether the trial judge was correct in denying defendants' peremptory exceptions of prescription and whether the trial court abused its much discretion in awarding plaintiff $50,000.00 in general damages for disability, pain and suffering.
Plaintiff filed suit on November 15, 1984 for personal injuries suffered as a result of an auto accident occurring April 29, 1983. Plaintiff sued the driver of a car which turned left off a two way street, in front of plaintiff's vehicle. Defendant and his liability insurer filed peremptory exceptions of prescription, which exceptions were denied. Following a trial on the merits, judgment was rendered awarding plaintiff benefits for lost wages, medical expenses and disability, pain and suffering. Defendants now appeal the general damage portion of the plaintiff's award in the final court judgment and the judgment denying defendants' exceptions of prescription. We affirm.

FACTS
The force of the collision caused plaintiff to hit his head on and crack his car windshield, caused his knees to knock the car dashboard loose, and the steering wheel to bend where he was holding it. Plaintiff was wearing his seat belt, however, the force of the collision pulled the seat out of the floor. His vehicle was a total loss.
After the accident plaintiff arrived at work by taxi cab, but was believed to be unable to work and was sent home to recuperate. The day after the accident, on *468 Saturday, April 30, 1983, plaintiff called the Hamilton Medical Group and spoke with Dr. Olivier, complaining of neck pains. Dr. Olivier told plaintiff to come in Monday, May 2, 1983 if he continued to have problems.
Plaintiff was first examined by Dr. Hugh Larriviere, an orthopedic surgeon, of the Hamilton Medical Group on May 2, 1983. Dr. Larriviere continued to treat plaintiff up to the time of trial on this matter. At trial Dr. Larriviere testified that plaintiff reported pain in his neck from the left ear down to the trapezius and paraspinous muscles which began shortly after the accident but which had significantly decreased over a period of several weeks. Plaintiff also suffered pain as a result of a contusion of both knees, for which he was prescribed muscle relaxants, pain relievers, whirlpool baths and ice packs. Eventually, plaintiff's right knee became essentially normal. Plaintiff's left knee, however, began to show signs of chondromalacia, or a grating of the patella against the bones underneath during bending and extending. It is also possible that plaintiff suffered from a cartilage tear. Plaintiff testified he is unable to jog, ride a bicycle, play raquetball, or perform any activity that requires a constant bending of the knees. He suffers from a "popping" sound in his left knee when extending his knee and from pain along the medial joint line of the left knee. Dr. Larrivierre indicated during his testimony at trial that plaintiff's knee complaints were definitely consistent with his accident on April 29, 1983. Plaintiff also began suffering from leg and lumbosacral pains; however, Dr. Larriviere felt that due to their remoteness in time to the accident these pains were not related to the accident. When asked about plaintiff's future prognosis, Dr. Larriviere testified that he would assign plaintiff a 20% impairment of the left knee. Dr. Larriviere also testified plaintiff would retain this disability even if surgery were performed to reduce the grating of the knee, since cartilage would have to be removed from the knee, which in itself would amount to a disability.
Several days after the accident, plaintiff received notice by mail that Kenneth LaCaze had filed a claim with State Farm Mutual Automobile Insurance Company (hereinafter State Farm), the liability insurer of both plaintiff and Kenneth LaCaze. Plaintiff's property damage claim was settled shortly following the accident. Plaintiff and State Farm also began discussing plaintiff's personal injury claim in June 1983. State Farm requested and received from plaintiff wage loss statements in order to arrive at a figure for plaintiff's wages lost as a result of the accident.
State Farm also advanced plaintiff two sums of money, one for $1,000.00 and one for $1,500.00, for a total of $2,500.00, such amounts to be credited toward a final settlement of plaintiff's claim. One of these advancements is reflected by a receipt signed by plaintiff and dated July 25, 1983 showing a cash advance for partial wage loss of $1,000.00. At the bottom of the receipt is a statement which reads in part as follows:
"This amount is to be credited to any final settlement or to the amount payable under our policy for any judgment you may obtain as result of your accident on 4-29-83." And,
"You are hereby notified that no lawsuit can be maintained for injuries sustained in the above discribed accident after N/A, 19____."
Mr. Louis Nigreville, the State Farm insurance agent with whom plaintiff dealt exclusively, entered the "N/A" in the blank portion of the receipt. The receipt is entitled "Receipt for Expense Advance," underneath which title is the statement "This is Not A Release."
Between the date of the accident and April 1984, State Farm agent Louis Nigreville corresponded with plaintiff several times concerning settlement of plaintiff's personal injury claim. In a memogram from Mr. Nigreville to plaintiff, which was stamped June 20, 1983, Mr. Nigreville requested a physicians statement concerning plaintiff's claim. Another letter from Mr. Nigreville to plaintiff, which was undated, indicates that State Farm had received a physicians statement and had made an offer for settlement. The tone of this letter *469 indicates no sense of urgency concerning the time in which the claim could be settled. In a letter from Mr. Nigreville to plaintiff dated March 1, 1984, State Farm apparently reoffered their settlement value for plaintiff's personal injury claim of $3,600.00, which offer was rejected by plaintiff. The March 1, 1984 letter also indicates no sense of urgency concerning the period in which plaintiff's claim would remain open for negotiation. The final written correspondence from Mr. Nigreville to plaintiff was by letter dated April 4, 1984. This letter indicates that State Farm's settlement of $3,600.00 was still open and indicates that State Farm was still amenable to a reevaluation of plaintiff's claim if plaintiff could provide other pertinent medical information.
Testimony during plaintiff's deposition reveals that plaintiff was unaware of any particular time during which he was required to file suit concerning his claim, that Mr. Nigreville advised plaintiff to "take as long as you want to decide" concerning acceptance of State Farm's settlement offer, and that he was led to believe by the "N/A" on the July 25, 1983 receipt, quoted above, that there was no time limit for him to file a lawsuit.
The deposition of Louis Nigreville indicates, as does plaintiff's deposition, that plaintiff and Mr. Nigreville never discussed any particular time in which plaintiff had to file suit or after which plaintiff's claim would prescribe. Indeed, the testimony of Mr. Nigreville indicates that he was essentially unaware of the prescriptive period concerning plaintiff's claim.
In September 1984 plaintiff for the first time contacted an attorney concerning his claim arising out of the April 29, 1983 accident. Suit was filed thereafter on November 15, 1984 against Kenneth LaCaze for his negligence which resulted in plaintiff's personal injuries. Defense counsel filed peremptory exceptions of prescription on behalf of defendants based on the plaintiff's filing suit beyond one year from the date of the accident, which exceptions were overruled without written reasons by judgment dated April 3, 1985. Following trial on the merits in the matter held on October 23, 1985, the trial court rendered judgment on December 20, 1985 in favor of plaintiff and against defendants, in solido.[1] Plaintiff was awarded $4,600.00 for lost wages, $894.00 for medical expenses, and $50,000.00 for disability, pain and suffering. Defendants now appeal the $50,000.00 disability, pain and suffering portion of the award and the judgment overruling their exceptions of prescription.

PRESCRIPTION
Delictual actions such as the action involved in the instant suit are subject to a liberative prescription of one year, which prescriptive period commences to run from the date of injury or damage. LSA-C.C. art. 3492, formerly LSA-C.C. arts. 3536 and 3537. However, prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. LSA-C.C. art. 3464. Liberative prescription is interrupted when the debtor acknowledges the right of the creditor. Acknowledgment of such a right may be formal or informal, express or tacit. See comments, LSA-C.C. art. 3464; Flowers v. U.S. Fidelity & Guaranty Co., 381 So.2d 378 (La.1979). Prescription of an unliquidated claim for damages can be interrupted by a tacit acknowledgment by the debtor. Id.; Richardson v. Louisiana Farm Bureau, Etc., 393 So.2d 200 (La.App. 1 Cir.1980), writ den., 398 So.2d 529 (La.1981). However, once the plaintiff's petition shows on its face that the prescriptive period has run, the burden of proof is on the plaintiff to show an interruption or suspension of prescription. Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3 Cir.1982).
In Flowers v. U.S. Fidelity & Guaranty Co., supra, our Supreme Court held that acknowledgment of a husband's right to recover for his wife's medical expenses as head and master of the community was sufficient to interrupt prescription, where a *470 defendant-insurer tacitly acknowledged the existence of their obligation to the husband by partial reimbursement of those medical expenses.
Under all of the facts of the instant case as set out in detail above, we find that plaintiff has satisfied his burden of proof that the actions of the defendant, State Farm, through its authorized agent, constitute sufficient acknowledgment of plaintiff's right to recover for his personal injuries to interrupt prescription of plaintiff's action.
Defendants contend that the actions of State Farm, through its agent, are insufficient to amount to an acknowledgment of plaintiff's claim that will interrupt prescription. For this proposition they cite Simmons v. Bartleet Chemical, Inc., supra; Frederick v. Aetna Life and Cas. Co., 467 So.2d 600 (La.App. 3 Cir.1985), and Dunham Concrete Products, Inc. v. Donnell Construction Co., 268 So.2d 104 (La.App. 1 Cir.1972). We find the opinion in Flowers to be controlling and the cases cited by defendants to be factually distinguishable. In conclusion, we find that the trial court was not clearly wrong in finding as a fact that prescription was interrupted as to plaintiff's claim for damages for disability, pain and suffering.

GENERAL DAMAGES AWARD
Defendants contend that the trial court's award to plaintiff of $50,000.00 in general damages is excessive. The appellate standard of review for excessiveness of a trial court award is set forth in a recent opinion from this court. Thomas v. West Calcasieu-Cameron Hosp., 497 So.2d 375 at page 379 (La.App. 3 Cir.1986) states:
"Before a trial court's award in general damages may be viewed as excessive or inadequate, this Court must look first, not to prior awards, but to the individual circumstances peculiar to the case. Only after an analysis of the facts of a particular case and an analysis of the particular injuries to the party may this Court determine the excessiveness or inadequacy of the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La. App. 3 Cir.1984). After an examination of the particular facts of a case, an appellate court must then determine whether the trier of fact clearly abused his much discretion in awarding damages. Former La.C.C. Art. 1934(3); Reck, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Darbonne, supra.
An examination of prior awards, in the initial determination of excessiveness or insufficiency, serves a limited function to serve as an aid in determining whether the award complained of is greatly disproportionate to past awards for "truly similar" injuries. Reck, supra, at page 501, citing Coco, supra. The mass of awards for truly similar injuries may therefore be used as an aid in determining a disproportion in the award complained of when viewed in light of the facts of the case; however, an appellate court will only disturb the award of the trial judge upon an initial determination of an abuse of the great discretion afforded the trier of fact. La.C.C. Art. 2324.1; Williams v. State Farm Mut. Auto. Ins. Co., 349 So.2d 1275 (La.App. 1 Cir.1977), writ den., 351 So.2d 175 (La. 1977)." (Footnote omitted.)
Plaintiff's injuries are described above. The effect on his activities has been substantial. Plaintiff was unable to work for almost two months, during which time he was in substantial pain and required to undergo physical therapy and ice pack treatments. He was also required to wear a leg brace for an undetermined period of time. After the two months immediately following the accident, plaintiff was able to return to work part time, but did so in pain. Eventually plaintiff was able to work full time; however, though once physically active in such activities as jogging, basketball, raquetball and bicycling, he is unable to perform activities involving strenuous bending and straightening of the knees without significant pain. Consequently, plaintiff is no longer able to engage in those sports. Plaintiff will likely be unable in the future to perform any physical activity *471 involving strenuous bending and straightening of his knees. He was approximately twenty nine years old at the time of the accident and weighed approximately the same since high school. The fact that the plaintiff gained some 30 pounds between the date of the accident and the trial on the merits is a possible effect of plaintiff's inactivity due to the accident.
Defendants contend that an examination of prior jurisprudence dealing with knee injuries warrants a reduction in plaintiff's general damage award. The mass of awards for truly similar injuries may be examined as an aid to determine whether or not the trial court abused its much discretion in an award for general damages. Reck v. Stevens, supra. In Deville v. K-Mart Corp., 498 So.2d 1122 (La. App. 3 Cir.1986), this court recently affirmed an award of $350,000.00 in general damages to a plaintiff who suffered a 15% disability of her knee and a worsening of a previous back disability by 10 to 15 percent and surgery following a year of constant pain. In Klein v. Himbert, 474 So.2d 513 (La.App. 4 Cir.1985), the court upheld a general damage award of $300,000.00 to a physically active college age student who sustained a 20% and a 10% permanent functional impairment of his right and left knee, respectively. In Samanie v. Bourg, 434 So.2d 149 (La.App. 5 Cir.1983), writ den., 435 So.2d 445 (La.1983), the court affirmed a trial court's award of $61,500.00 to an auto accident plaintiff who suffered contusions, bruises, neck pain and suffered from a lateral meniscus left knee injury likely aggravating a pre-existing knee injury and who was expected to retain a 5% to a 25% physical impairment of the knee after future surgery. While the plaintiffs in Deville and Klien likely suffered respectively from a more significant assigned disability and from a more difficult recovery period, the substantial effect of this plaintiff's disability on his lifestyle as a result of the accident causes his injuries to be even more damaging. We conclude the mass of awards for truly similar injuries does not show an abuse of discretion. Moreover, the particular facts of the instant case, as articulated above, show no abuse of discretion as to plaintiff's general damage award.
For the foregoing reasons, the judgment of the trial court denying defendants' peremptory exceptions of prescription and the judgment awarding plaintiff damages are affirmed. All costs of this appeal are taxed to the defendants-appellants.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] State Farm Mutual Automobile Insurance Company was erroneously referred to in the December 20, 1985 judgment as State Farm Mutual Insurance Company.