STOKER, Judge.
Christine McManus appeals from a judgment denying her rule to enforce a compromise settlement made in connection with suit filed against her by Jacky Wayne Pace and his wife, Bonnie Franson Pace. We agree with the result reached by the trial court and affirm.
FACTS
The subject of this litigation is a piece of property originally purchased by four parties: Mrs. McManus, her former husband, Elton Ray Pace, her brother-in-law, Jacky Wayne Pace, and his wife, Bonnie. Jacky and Bonnie Pace filed suit against Mrs. McManus claiming that she failed to pay her share of the semi-annual payments of $1,729.14 on the property. The suit alleged that the payments were made by Jacky and Bonnie Pace, and they sought reimbursement for payments made on behalf of Mrs. McManus.
On August 31, 1983, Mrs. McManus filed a Rule to Enforce Compromise Settlement relying on a number of letters between her attorney, Mr. Arthur, and the Paces’s attorney, Mr. Harrington. All but one of the letters was written by Mr. Arthur to Mr. Harrington. One letter was from Mr. Harrington to Mr. Arthur, and one of the letters from Mr. Arthur has a handwritten reply from Mr. Harrington on it. Mrs. McManus takes the position that these letters show that the parties reached a compromise agreement in which Jacky Pace agreed to pay her $7,000 in cash in exchange for a quitclaim deed for all of her interest in the property.
The trial court found that there was no agreement because the terms of payment were not specified, and the rule to enforce the compromise agreement was denied. We affirm.
APPLICABLE LAW
Mrs. McManus takes the position that the exchange of letters between the attorneys is sufficient to constitute a written settlement agreement between her and the Paces as required by LSA-C.C. art. 3071. The letter by Mr. Arthur dated February 15, 1983 which purportedly sets out the terms of the agreement reads as follows:
“This will confirm our settlement based upon Jack paying Mrs. McManus the sum of $7,000, in cash, exchanged for a quit claim deed of all of her interest in the real estate. In consideration of this, the parties will release one another from
*87 any further accounting and claims against one another in connection with the land; and further, Jack will dismiss this suit, with prejudice, at his cost. Mrs. McManus will receive a net of $7,000.
“Please be sure the sales instrument you prepare is without any warranty of any type, even for return of the purchase price, but Mrs. McManus will convey all of her rights and actions of warranty she may have against preceding vendors. Also, please include in the instrument a settlement of the claims, and recite that another consideration is the dismissal of the Pace suit, with prejudice, at his cost.”
In a subsequent letter dated March 16, 1983 from Mr. Arthur questioning the delay in the matter, there appears a handwritten note by Mr. Harrington which reads:
“I have written Jack twice & spoken to his wife once, but he hasn’t called me so that we can wrap this up.”
There is further correspondence by Mr. Arthur to Mr. Harrington asking about the delay in the matter. The only letter written by Mr. Harrington to Mr. Arthur was dated April 19, 1983, and reads:
“I have your letter of April 13, 1983. You are correct that we reached a settlement in this case. I have been waiting on Jack to contact me so that we can conclude the matter, but I have not heard from him. I understand that you are going to take the matter on to hearing if you don’t hear from us soon.”
Further correspondence indicates that Jack Pace was negotiating to pay the $7,000 purchase price in installments, and Mrs. McManus expected payment to be made in cash. Her position is that the terms of payment were set out in Mr. Arthur’s letter of February 15, 1983.
We do not find that the correspondence between the attorneys introduced into evidence constitute a written offer and acceptance of a compromise in this case. The letters in question refer exclusively to Jacky Pace; there is no reference to the other plaintiff in the initial suit, Bonnie Pace. We also find that the two communications by Mr. Harrington to Mr. Arthur clearly indicate that the Paces had not yet consented to the proposed settlement.
The proposed settlement constitutes a transfer of immovable property, and as such, must meet the requirements for a sale of immovable property. Such a contract must be in writing, must be signed by the buyer and seller, and if an agent executes the contract on behalf of one of the parties, his authority must be express and in writing. Rebman v. Reed, 335 So.2d 37 (La.App. 4th Cir.1976), writ denied, 338 So.2d 699 (La.1976); see also LSA-C.C. arts. 2275, 2276, 2992 and 2997. There is no evidence before us of any written authority given either of the attorneys in this case, nor does the exchange of correspondence amount to a written contract signed by the buyer and the seller. The trial court correctly refused to enforce the proposed settlement.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant and plaintiff-in-rule-appellant, Christine McManus.
AFFIRMED.