720 So.2d 372 (1998)
WALK HAYDEL & ASSOCIATES, INC.
v.
COASTAL POWER PRODUCTION COMPANY, La Casa Castro S.A. de C.V. and Latin American Energy Development, Inc.
No. 98-CA-0193.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1998.
Pedro J. Martinez-Fraga, Elliott H. Scherker, Greengerg Traurig Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for Defendant/Appellant.
Frederick W. Bradley, Liskow & Lewis, New Orleans, for Defendant/Appellant.
Edward F. Downing, III, John W. Houghtaling, III, Gauthier, Downing, LaBarre, Beiser & Dean Metairie, for Defendant/Appellee.
Ernest L. Edwards, Jr., C. William Bradley, Jr., David F. Waguespack, Lemle & Kelleher, L.L.P., New Orleans, for Amicus Curiae, EPEC Gas International, Inc.
Before BARRY, KLEES and McKAY, JJ.
McKAY, Judge.
The appeal presently before us originates out of a cross claim brought by Latin American Energy Development, Inc., d/b/a Delasa against its co-defendants including La Casa Castro, S.A. de C.V. regarding Delasa's ownership interest in the Nejapa Power Plant in El Salvador. On a Rule to Show Cause Why Settlement Agreement Should Not be Enforced, the trial court granted Delasa's motion to enforce settlement and La Casa Castro now appeals. We affirm the judgment of the trial court.
Delasa brought its claim against its co-defendants, La Casa Castro and Coastal Power Production Company, as well as Tenneco Gas International. On April 28, 1995, the parties entered into an Agreement to Mediate. On June 24, 1997, Delasa and La Casa Castro met with a mediator in Houston, *373 Texas to try to resolve the conflict. After a full day of mediation the two did reach an agreement in the early morning hours of June 25, 1997, which was documented by a "Memorandum of Settlement." This "Memorandum" contained a checked off preamble "B." which stated that the parties "[a]gree to enter into a subsequent settlement agreement, on or before 24th of July, 1997, incorporating the terms set forth herein:" Then the following handwritten terms of settlement were listed:
1. Seventeen (17%) percent of passive equity income (as represented by La Casa Castro) of the 144 MW expaneded plant.
2. $500,000.00 (USD) to be paid upon the execution of the settlement agreement.
3. $400,000.00 (USD) to be paid upon satisfactory resolution of ESI (McVay) and Fink-(releases).
4. Indemnification allotted as follows `DELASA pays 25% and La Casa Castro pays 75%, maximum amount to be paid by DELASA $600,000.00.'
5. Appropriate releases exchanged by the parties.
This document was signed by: John Wheelock, as president of Delasa, Robert Vilanova, as president of La Casa Castro, and Alex Vilanova, as vice-president of La Casa Castro.
After the execution of this document, negotiations continued between Delasa and La Casa Castro as well as the other parties. Several proposed settlement agreements were passed back and forth. However, July 24, 1997 passed but no further settlement agreement was entered into by the parties nor were any releases drafted or payments made in accordance with the "Memorandum of Settlement." On September 18, 1997, Delasa filed a Rule to Show Cause Why Settlement Agreement Should Not be Enforced. At this proceeding, only the agreement to mediate and the "Memorandum of Settlement" were introduced into evidence. The authenticity of these documents was admitted by both sides. The trial Judge found that the the "Memorandum of Settlement" should be "enforced as a settlement agreement according to its terms."
The primary issue is whether the Trial Court committed manifest error when it held that "Memorandum of Settlement" was a binding agreement and should be enforced according to its terms. Delasa contends that the "Memorandum" was an enforceable agreement as the Trial Court ruled, while La Casa Castro contends that the "Memorandum" was merely an agreement to agree and therefore unenforceable.
We must first determine whether the parties had intended to reach a compromise over the conflict between them. According to Civil Code Article 3071:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
This Court has held that a compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached. Pat O'Brien's Bar, Inc. v. Franco's Cocktail Prods., Inc., 615 So.2d 429 (La.App. 4th Cir. 1993), writ denied, 617 So.2d 909 (La.1993). In the instant case the parties were involved in a full day of mediation at the end of which they signed a memorandum of settlement which contained several handwritten terms upon which the parties had agreed. The fact that a whole day of negotiations was capped off by the signing of a document which memorialized the agreement between the parties signifies that there had been a meeting of the minds. Otherwise the document would not have been signed, particularly considering who signed.
*374 We must also determine whether this document was sufficient to constitute a legally binding and enforceable agreement. "The only formal essential for a compromise is a writing." Audubon Ins. Co. v. Farr, 453 So.2d 232, 234 (La.1984). This Court has said "there is no sacrosant form which must be followed" and "it is not necessary that everything intended to be compromised be in one document." Charbonnet v. Ochsner, 236 So.2d 86, 88 (La.App. 4th Cir.1970), aff'd, 258 La. 507, 246 So.2d 844 (La. 1971). In the instant case, we have a writing and although its terms are handwritten and may encompass less than all the issues between the parties, this does not negate its enforceability. The document in question was in writing and evidenced a meeting of the minds. This Court has stated that a party's signature on a contract establishes the presumption that he saw and understood the terms of the contract. Barcelona v. Sea Victory Maritime, Inc., 619 So.2d 741 (La.App. 4th Cir. 1993), writ denied, 626 So.2d 1179 (La.1993). Therefore, it is our opinion that the "memorandum of settlement" is a legally binding agreement.
For the forgoing reasons we find that the trial court did not err when it found that the "memorandum of settlement" was an agreement between the parties and ordered that it be enforced. Therefore, we affirm the Trial Court.
AFFIRMED.
KLEES, J., concurs.
KLEES, Judge, concurring.
Although the parties agreed to enter into a subsequent settlement agreement which did not occur, the fact that the parties placed there signatures on the document which specifically listed "the terms of settlement" convinces me that the parties intended to confect an agreement as to those terms. For this reason, I believe the document constitutes an enforceable contract.