JONES, Judge.
| ,The Appellant, Mrs. Beulah Elder (hereinafter “Mrs. Elder”), seeks review of a district court judgment granting the Motion to Enforce Settlement and Execution of Settlement Documents of the Appellees, Elder & Elder Enterprises and S. Thomas Elder. We affirm the decision of the district court.
Statement of Facts
James H. Elder, Jr. and his older brother, S. Thomas Elder formed Elder & Elder Enterprises, Ltd., d/b/a Triple E to collectively manage property they inherited from their parents. Following the death of James H. Elder, Jr., Mrs. Beulah Elder — the widow of James H. Elder, Jr. and the Testamentary Executrix of the Succession of James H. Elder, Jr. — sued Elder & Elder Enterprises, Elder L.L.C., and S. Thomas Elder, the Appellees, on September 13, 2004. The lawsuit alleged that the Appellees committed corporate misdeeds, namely the mismanagement of the assets of the Elder & Elder Enterprises and Elder, LLC.[1]
During the course of the on-going litigation, the Appellant, through one of her attorneys of record, broached the topic of *350 settlement via correspondence with 1 ¡.Elder & Elder Enterprises and S. Thomas Elder (hereinafter collectively referred to as “EEE”).[2] Further- settlement discussions ensued until EÉE provided Mrs. Elder with its final counter-offer in a letter dated July 28, 2005. Counsel for Mrs. Elder replied to EEE on August 1, 2005, advising that Mrs. Elder accepted the counteroffer proposed in the July 28, 2005 letter.[3]
Settlement documents were forwarded to Mrs. Elder from EEE on August 22, 2005. Hurricane Katrina and its aftermath struck the greater New Orleans area soon thereafter. The parties did not communicate again until September 29, 2005, at which time EEE’s counsel followed up with Mrs. Elder’s counsel. It was at that time that EEE was informed that Mrs. Elder no longer desired to proceed with the settlement.
On November 23, 2005, EEE filed a Motion to Enforce Settlement against Mrs. Elder, who in turn filed a Dilatory Exception of Unauthorized Use of Summary Proceedings. A hearing was held on both the motion and the exception on February 17, 2006. The district court issued a Judgment on March 28, 2006, granting EEE’s Motion to Enforce Settlement and overruling Mrs. Elder’s Exception of Unauthorized Use of Summary Proceedings. The district court determined that the requisites of a compromise were met as the correspondence exchanged between the parties showed that all parties acquiesced to ■ the agreement.[4] Mrs. Elder filed a timely appeal from the district court judgment on April 26, 2006.
| Issues/Assignments of Error
Mrs. Elder avers that the district court committed reversible error in finding that the correspondence exchanged between the appellant and appellees created a binding settlement over immovable property where appellant/client did not authorize her counsel in writing to accept a settlement.
Law and Discussion
Louisiana Civil Code article 3071 defines a compromise as follows:
An agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding ...
 A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached. Walk Haydel & Associates, Inc. v. Coastal Power Production Co., 1998-0193, p. 3 (La.App. 4th Cir.9/30/98), 720 So.2d 372, 373 (citing Pat O’Brien’s Bar, Inc. v. Franco’s Cocktail Prods., Inc., 615 So.2d 429 (La.App. 4 Cir. 1993), writ denied, 617 So.2d 909 (La.1993)). Indeed, a compromise is a contract. Stern v. Williams, 365 So.2d 1128 *351 (La.App. 4th Cir.1978), writ denied, 368 So.2d 143 (La.1979).
Contracts are formed by the consent of the parties established through offer and acceptance. La. Civ.Code art. 1927. Thus, “before a district court can find the existence of a valid written compromise agreement, it must find an offer and an acceptance.” McRae v. Ellis, 93-1579, (La.App. 4 Cir. 2/11/94), 632 So.2d 841, 843 (citing Felder v. Georgia Pacific Corp., 405 So.2d 521, 523-524 (La.1981)).
[¿The law requires the compromised settlement to be reduced to writing; however, “this Court has said ‘there is no sacrosanct form which must be followed’ and ‘it is not necessary that everything intended to be compromised be in one document.’ ” Walk Haydel & Associates, Inc., 1998-0193, p. 3, 720 So.2d at 374 (quoting Charbonnet v. Ochsner, 236 So.2d 86, 88 (La.App. 4 Cir. 1970), aff'd, 258 La. 507, 246 So.2d 844 (La.1971)).
In deciphering when separate instruments satisfy the writing requirement of La. C.C. art. 3071, the Supreme Court has reasoned that where two instruments, when read together, outline the obligations each party has to the other and evidence each party’s acquiescence in the agreement, a written compromise agreement, as contemplated by Article 3071, has been perfected. Felder v. Georgia Pacific Corp., 405 So.2d 521, 523-524 (La.1981).
Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it. Duet v. Lucky, 621 So.2d 168, 172 (La.App. 4 Cir.1993) (citing Ellison v. Michelli, 513 So.2d 336 (La.App. 4th Cir.1987)).
The issue that Mrs. Elder raises on appeal necessitates that we answer two questions. First, is there a specialized procedure for settling a dispute involving the transfer of immovable property? If there is, the second question that needs to be answered is whether said procedure was followed. Our opinion, under the facts of this case, is that there is no such specialized form.
Mrs. Elder asserts that a settlement involving immovable property must meet the same criteria as a sale of immovable property. EEE maintains that a valid settlement can be established based on correspondence alone.
| rJn support of her position, Mrs. Elder cites the Third Circuit case of Pace v. McManus, 463 So.2d 85 (La.App. 3rd Cir. 1985). In Pace, four persons-two couples — purchased a piece of property. One couple, the Paces, sued one of the parties, Mrs. McManus, for failing to pay her share of the semi-annual property payments. The Paces sought to be reimbursed for payments they made on Mrs. McManus’s behalf.
The attorneys for both parties exchanged correspondence throughout the duration of the lawsuit. Mrs. McManus later filed a Motion to Enforce Settlement wherein she argued that a settlement was reached based , on the correspondence exchanged between herself and Mr. Pace. She claimed that Mr. Pace had agreed to purchase her interest in the property for $7,000.00.
The Third Circuit explained that an agreement was not reached for two reasons. The first reason was that both Mr. and Mrs. Pace had to agree to the $7,000.00 offer, but only Mr. Pace consented to the offer. The second reason was that Mr. and Mrs. Pace did not give their attorneys written authority to execute a contract on their behalf.
Similarly, the Pace court’s reliance on the Fourth Circuit’s holding in Rebman v. Reed, 335 So.2d 37 (La.App. 4 Cir.1976), writ denied, 338 So.2d 699 (La.1976), fur *352 ther illustrates that the application of the requirement that attorneys must be given written authority to execute contracts involving the transfer of immovable property is based upon the facts of the case.
In Rebman, plaintiff William Rebman contracted with real estate agent1 Mrs. Gertrude Gardner to purchase a house from Mrs. Gardner’s client, C. Espy Reed. Mrs. Gardner — as an agent for Reed — • agreed to sell the subject property to | fiMr. Rebman. However, Reed repudiated Mrs. Gardner’s acceptance. Mr. Rebman and Mrs. Gardner’s corporation sued Reed for breach of a written contract to sell immovable property. This Court held that Mrs. Gardner did not have Reed’s written consent at the time that she contracted with Mr. Rebman, and Reed did not subsequently consent to the agreement.
The facts of both Pace and Reb-man reveal that the holdings in each case were fact intensive as both cases involved disputes that solely involved determining the status of immovable property that was directly at issue from the inception of the -lawsuit. The facts of the instant case, however, are clearly distinguishable.
In Pace, solely immovable property was at issue in that four couples had invested in a piece of land. The parties were purportedly attempting to reach a settlement to transfer the land at issue to the Paces, who were due reimbursement from Mrs. McManus. Yet, in the case at bar, Mrs. Elder — as the Executrix of her late husband’s estate — sued EEE alleging corporate misdeeds and requesting the liquidation of Elder & Elder Enterprises, LTD and Elder, LLC, under the direction of a receiver. A review of the record reveals that the assets of the corporation consisted of both movable and immovable property.[5]
During the course of ongoing litigation, Mrs. Elder, through her counsel of record, attempted to settle this matter. The settlement that was reached included the transfer of immovable property to Mrs. Elder to resolve the corporate dispute. The settlement satisfied the requirements of Louisiana Civil Code article 3071 in that both parties worked together to reach an agreement to resolve a dispute that was in Mitigation. Additionally, the July 28, 2005 correspondence signed by EEE’s attorney and the August 1, 2005 letter signed by Mrs. Elder’s counsel signify that the terms of this agreement were reduced to writing. Thus, a binding contract was formed. Mrs. Elder’s consent was not vitiated by bad faith, error or fraud. Borchardt v. Carline, 92-1332 (La.App. 4 Cir. 4/15/93), 617 So.2d 970, 973.
Requiring attorneys to secure the express and written consent of their clients as buyers and/or sellers in all settlements that include the transfer of immovable property is too onerous of a requirement in cases where the nature of the dispute itself does not involve immovable property. Such a requirement would only serve to impede settlements and thereby weaken our jurisprudential practice of encouraging judicial settlement of on-going litigation.
Decree
For the reasons stated herein, the judgment of the district court granting Elder & Elder Enterprises and S. Thomas Elder’s Motion to Enforce Settlement and Execution of Settlement Documents is affirmed.
AFFIRMED.

. The lawsuit was initially' filed in the Fifteenth (15th) Judicial District Court in the Parish of Acadia, but was subsequently transferred to the Civil District Court for the Parish of Orleans. Elder, LLC was eventually dismissed from this matter on an Exception of No Right of Action.

. A detailed settlement proposal was included in Mrs. Elder's May 5, 2005 correspondence to EEE. ’

. In EEE’s July 28, 2005, letter to Mrs. Elder, EEE responded to her inquiry of whether EEE was willing to sell her .88 acres. EEE responded by advising Mrs. Elder that the immovable property was indeed for sale, subject to EEE board approval. The purchase price was $45,000.00 for the .88 acres. It is unclear from Mrs. Elder’s acceptance letter whether she was also agreeing to purchase this acreage.

.November 8, 2006 Per Curiam of the Civil District Court, Orleans Parish, Division J, Nadine M. Ramsey, J.

. Counsel for EEE provided Mr. Barousse with a list of the assets of Elder and Elder, LTD in a letter dated July 19, 2005.