PAUL A. BONIN, Judge.
|,Landis Construction Company, L.L.C., executed a public-bid contract with the *961 governing authority of St. Bernard Parish to repair and renovate the parish’s courthouse which was badly damaged in 2005 during Hurricane Katrina. Because the construction contract was a public-bid contract, its text was wholly furnished by the Parish. The contract required that Landis (and not the Parish) furnish “ALL RISK” builder’s risk insurance, which Landis did. Exactly seven years after Katrina, and before completion of repairs, Hurricane Isaac severely damaged the courthouse. The insurance company covered the losses, less the 3% windstorm deductible which amounted to $367,029.26.
The issue for us, as it was for the trial judge, is to decide which of the parties to the contract — Landis or the Parish — bears the cost of those losses not covered due to the deductible. The parties filed cross-motions for summary judgment in which each argued that it was entitled to a judgment as a matter of law under what each described as the clear and unambiguous provisions of the contract. Each party could plausibly read the same contractual provisions to arrive at a conclusion ^favorable to its position. On our de novo review of the contract and the cross-motions, we find that the contract’s allocation of responsibility for bearing those losses not covered due to the deductible, as the contract is written, is susceptible to more than one' interpretation and is therefore ambiguous. And because this particular contract did not involve bilateral negotiations, which might otherwise aid in the determination of the intent of both parties, we conclude that we must interpret the contract’s provision respecting the allocation of losses not covered due to the deductible against the Parish as the party who furnished the text and in favor of Landis.’
We therefore affirm the trial court’s granting of Landis’ motion for summary judgment, its denial of the Parish’s motion, and its award of $367,029.26 to Landis. We explain our decision in greater detail below.
I
In drafting the contract for the courthouse’s repair and renovation, the Parish utilized some of the forms suggested by the American Institute of Architects (or ALA). One of the suggested forms considered for use by the Parish was ALA Form A201, which provides that it is the obligation of the “owner” to obtain the “ALL RISK” builder’s risk insurance. And this form at § 11.3.1.3 further includes the following provision: “If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.” The final contract as signed by Landis included ALA Form A201 within its four corners, but the Parish indisputably rejected Form A201 as written and substituted its own text.
|sThe Parish’s customized text deviates from Form A201 in that it shifts the obligation of providing the “ALL RISK” builders risk insurance for the full-completed value of the entire work from the Owner, which is the Parish, to Landis. But unlike Form A201, the Parish’s text does not make explicit a correlative obligation that Landis, rather than the Parish, is to pay for those losses not covered due to the deductible.
The Parish’s customized text also deviates from Form A201 by addressing a circumstance not mentioned in Form A201. The Parish’s text adds a provision that the Contractor — Landis—“has the right to purchase coverage or self-insure any exposures not required by the bid specifications.” But, the text explicitly provides, the Contractor “shall be held liable for all losses, deductibles, self-insurance [sic] for coverages not required.”
*962 Reading these provisions together, the Parish interprets the contract to require that the party who bears the obligation of providing the full-value insurance also bears the obligation of paying for those losses not covered due to the deductible. Notably, the Parish does not suggest or propose as questions of disputed fact that an “ALL RISK” builders insurance policy without a windstorm deductible could have been obtained by Landis or that the 3% windstorm deductible exceeded insurance industry norms. But it argues that Lan-dis’ obligation to fully insure the risk also obligates it to bear those costs or losses not covered due to the deductible in the same way that AIA Form A201 provides that the Owner must provide both an insurance policy and cover the losses not covered |4due to the deductible. And the Parish further argues that by providing explicitly that Landis is to bear those losses not covered due to deductibles on non-required coverages does not imply the converse — that losses not covered due to the deductible on the required builders-risk insurance is the responsibility of the Parish.
Landis, reading these provisions together, interprets the contract to require the Parish to pay for those losses not covered due to the deductible. Landis highlights the fact that it obtained the required builders-risk policy. It notes that AIA Form A201 allocates the uncovered losses due to the deductible to the Owner, and that if the Parish meant to shift to the Contractor those losses not covered by the required builders-risk insurance it could have simply written, in the clear style of AIA Form A201: “If the property insurance requires deductibles, the Contractor shall pay costs not covered because of such deductibles.” Landis also argues that the Parish should not have distinguished between required and non-required insurances and then only explicitly provide that the Contractor shall be liable for those losses not covered because of the deductible on the non-required insurances.
Considering their especial perspectives as interested parties, we cannot say that either party’s interpretation of the contract is implausible or would lead to absurd consequences. But it is on this account that we, unlike the interested parties, find the contract ambiguous and turn in the next Part to explain why.
JjJI
The Civil Code instructs us in the proper method of contract interpretation. A contract constitutes the law between the parties. See La. Civil Code art. 1983. And “[i]nterpretation of a contract is the determination of the common intent of the parties.” La. Civil Code art. 2045 (emphasis added). If the words of a contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the parties’ true intent. See La. Civil Code Art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. See La. Civil Code Art. 2050. “When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide.” Lalla v. Calamar, N.V., 08-0952, p. 8 (La.App. 4 Cir. 2/11/09); 5 So.3d 927, 932, quoting American Deposit Ins. Co. v. Myles, 00-2457, p. 5 (La.4/25/01); 783 So.2d 1282, 1286. Meaning and intent of parties to a written instrument is ordinarily determined from the instrument’s four corners and extrinsic evidence is inadmissible either to explain or to contradict the instrument’s terms. See Lalla, 08-0952, p. 8, 5 So.3d at 932.
*963 And so the interpretation of unambiguous contractual provisions is a matter of law, which we review under the de novo standard. See 6126, L.L.C. v. Strauss, 13-0853 (La.App. 4 Cir. 12/4/13), p. 13; 131 So.3d 92, 100-101. Likewise, and importantly for our purposes, the determination of whether a contract is clear or is ambiguous is also a question of law. See Edwards v. Daugherty, 03-2103 (La. 10/1/04);6 pp. 12-13, 883 So.2d 932, 941. But here, each party offers a plausible interpretation of the contract which would suggest that it was their common intent that the other party bear the cost of the deductible. “A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue, the terms of the written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.” Campbell v. Melton, 01-2578, p. 6 (La.5/14/02); 817 So.2d 69, 75.
Here, the AIA’s Form A201 does not lack an explicit provision bearing on the issue: the Owner, who is obligated to provide the full-value insurance, bears the deductible costs. But the Parish deviated from Form A201’s provision. The Parish’s substituted provision with respect to coverages which are not required does not lack for an explicit provision bearing on the issue: the Contractor bears any costs for losses which are uncovered due to the deductible. When viewed in the light of these explicit provisions, we conclude that the contract lacks a provision bearing on the issue of who is responsible for losses not covered due the required builders-risk insurance deductible. And on this point we must reject the Parish’s contention that an agreement to provide a full-value insurance policy is ordinarily understood either to provide for a policy without a deductible or to compel the contractor to bear those losses not covered by virtue of the deductible.[1]
17Moreover, because the terms of the written contract are susceptible to more than one plausible interpretation, as we discussed in Part I, ante, we must conclude that this contract is ambiguous as to the issue of who bears responsibility for those losses left uncovered due to the deductible.
Ill
As a general proposition, when we find a contract to be ambiguous, we at the same time would find that an issue of fact exists and then conclude that the matter is not ripe for summary judgment. See, e.g., Johnson v. Orleans Parish School Bd., 10-1388, p. 11 (La.App. 4 Cir. 12/20/11); 80 So.3d 1175, 1183. This dispute, however, presents a special circumstance because the parties have not presented, and the record does not disclose, any factual dispute which, when resolved by the fact-finder, would determine the common intent of these parties. For example, neither party suggests that information furnished at a mandatory pre-bid conference, or that the amount of the bid itself, would assist the fact-finder in determining the intent of the parties. Similarly, testimony *964 from party representatives as to their understanding of the provisions under review would do nothing save cumulatively amplify the competing interpretations put forward by the parties’ counsel. The nature of the dispute before us, therefore, cannot be resolved by recourse to parol evidence. Cf, e.g., Succession of Barreca v. Weiser, 10-0574, p. 16 (La.App. 4 Cir. 11/3/10); 53 So.3d 481, 491 (“Thus, where | ^uncertainty exists as to the terms of a written contract, because its provisions are susceptible to more than one interpretation or when the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties.”).
Instead, the controversy before us presents a legal — as opposed to factual — dispute which focuses entirely on textual interpretation. Our Civil Code instructs us on the means of supplying a resolution of the ambiguity: “In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.” La. Civil Code art.2056 (emphasis added). The Civil Code further directs that “[a] contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.” Id.
As we have noted, one portion of the text before us is AIA standard-form contract while the other was crafted solely by the Parish.[2] In either case, the content of the text was chosen, prepared, and furnished entirely by the Parish. Landis had no input whatsoever in the selection or drafting of the contractual provisions at issue. The Civil Code, therefore, impels us to interpret the contract before us in favor of Landis and against the Parish. See, e.g., Jones v. Vela’s Garage & Rental, Inc., 97-2486, pp. 6-7 (La.App. 4 Cir. 5/27/98); 717 So.2d 246, 249-250.
|flIn light of these longstanding interpretive canons, we interpret the contract so as to find that as between the parties it is the Parish which is obligated to cover those losses not covered due to the required “ALL RISK” builders insurance policy deductible.
CONCLUSION
The contract between Landis and the Parish is ambiguous as written with respect to which party is obligated to cover those losses left uncovered due to the “ALL RISK” builders insurance policy’s deductible. Because there are no outstanding factual disputes, the resolution of which would clarify the parties’ intent, and because the Parish furnished the standard-form contract between the parties as well as the ambiguous language at issue, we interpret the ambiguous provision against the Parish and in favor of Landis. We conclude, accordingly, that the Parish is obligated to cover those losses not covered due to the “ALL RISK” builders insurance policy deductible.
DECREE
The district court judgment sustaining Landis Construction Company, L.L.C.’s motion for summary judgment, denying St. Bernard Parish’s motion for summary judgment, and awarding $367,029.26 to Landis Construction Company, L.L.C., is affirmed.
AFFIRMED

. Especially in the context of public bidding, if such a policy without deductible even exists, the public body would never actually shift the risk of loss for costs not covered due to a deductible to the bidding parties. The bidders would include such contingency in their bids, and the consequence would be that the public body would absorb the losses and expenses not covered due to deductibles in every bid even though there might never be an event which actually occasioned a loss claim. And, unlike the cost of the premium for a policy, which would be fixed, a loss not covered because of a deductible would prudently be estimated by a bidder at the maximum possible loss.

. The parties before us do not dispute the fact that an AIA contract is a standard-form contract. See, e.g., Lamarque v. Barbara Enterprises, Inc., 06-1422, p. 1 (La.App. 4 Cir. 4/25/07); 958 So.2d 708, 709; Hurley v. Fox, 587 So.2d 1, 1 (La.App. 4 Cir.1991).