| GILBERT V. ANDRY, IV AND GIBBY ANDRY, THE ANDRY LAW FIRM, LLC | * | NO. 2019-CA-0459 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | * | FOURTH CIRCUIT |
| OMEGA HOSPITAL, L.L.C. | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-10018, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome,
Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

Campbell Edington Wallace
Everett R. Fineran
FRILOT, L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163--3700
        COUNSEL FOR PLAINTIFF/APPELLANT

Philip Anthony Franco
Timothy M. Brinks
ADAMS & REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
        COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED IN PART,
AFFIRMED IN PART,
AND REMANDED**

**NOVEMBER 6, 2019**

Appellants, Gilbert V. Andry, IV, and Gibby Andry, The Andry Law Firm, LLC, appeal the district court's March 22, 2019 judgment granting summary judgment in favor of Appellee, Omega Hospital, LLC, and denying their motion for partial summary judgment. The judgment dismissed Appellants' claims with prejudice. For the reasons that follow, we reverse the judgment of the district court in part, affirm in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2018, Appellants filed a petition for damages against Appellee. Therein, Appellants stated that on November 3, 2010, Appellee filed its own petition against Louisiana Health Service and Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana (hereinafter "BCBS"), resulting from BCBS' "systematic underpayment for medical services of out-of-network providers like Omega." Appellee ultimately retained Appellants to represent it on a contingency fee basis.[1] On January 20, 2012, the parties entered into an agreement whereby

---

[1] Appellee was originally represented by a different firm that was apparently charging an hourly rate for its services.

Appellants would receive a fee of one-third of the "gross recovery" obtained by Appellee in their suit against BCBS. Specifically, the parties agreed that Appellants would represent Appellee "in all matters pertaining to any and all claims which we have or may have against [BCBS,]" further specifying the case name and number for the already pending action. The parties agreed that in the event of settlement, Appellants' one-third fee would "be based on a percentage of the value of the case at the time of the settlement[.]" Appellants thereafter retained T. Cary Wicker, III and his firm to serve as co-counsel.

Pursuant to the agreement, Appellants litigated Appellee's claims up to the weeks before trial, at which point BCBS communicated an interest in mediation. Ultimately, according to Appellants, the mediation resulted in an agreement for BCBS to pay "a lump sum payment to Omega for underpayment for past medical services as well as an in-network contract for future services provided by Omega." Appellee, on the other hand, notes the agreement contained language only that the parties "will undertake a good faith effort to negotiate an in-network provider agreement." While this is true, the agreement further set forth "terms and conditions" with respect to those negotiations, e.g., length of the agreement (three years) and reimbursement rates. A settlement agreement was thereafter finalized on May 9, 2016.

Days after the mediation agreement had been signed, Appellee communicated to Appellants its understanding that Appellants would be paid a fee based only on the gross lump sum payment by BCBS, and not also on the gross

recovery associated with the in-network agreement, a dispute which is alleged to have ultimately brought an end to the representation.[2] Mr. Wicker, co-counsel in the matter, was retained and proceeded to negotiate with BCBS on behalf of Appellee on the terms of the in-network agreement. In September of 2016, Appellee filed another suit against BCBS to enforce the settlement agreement,[3] which suit was ultimately dismissed in May, 2018, as a result of the parties reaching an agreement on an in-network contract. Appellants' petition argued that Appellee's gross recovery included the monies it will receive as a result of its in-network contract with BCBS; however, Appellee paid only $100,000, and submitted a release to Appellants, which Appellants refused to sign.

Appellants' petition submitted that Appellee's in-network contract with BCBS "was a significant part of the consideration received" by Appellee, and that they would have "demanded a substantially higher lump sum" but for that contract. It further alleged that fees to be paid by Appellee to Appellants "for the gross recovery by [Appellee] for an in-network agreement with BCBS were specifically discussed."

On January 7, 2019, Appellee filed a motion for summary judgment and an exception, and on February 21, 2019, Appellants filed their own motion for partial summary judgment. On March 22, 2019, the district court held a hearing on the

---

[2] Appellants' petition submitted this amount would be "one-third of the gross past and future payments [Appellee] will received pursuant to its in-network agreement with BCBS in excess of its out-of-network reimbursement rate."

[3] The lawsuit was filed as a result of Appellee's contention that BCBS was not negotiating in good faith.

motions for summary judgment and Appellee's exception; it ultimately granted Appellee's motion and denied Appellants' motion, rendering Appellee's exception moot. The court entertained arguments similar to those on appeal set forth more fully below. However, counsel for Appellee argued that if Appellants intended to collect fees on the in-network contract, they should have explicitly included such language in the agreement, contrasting the agreement in dispute with a subsequently drafted agreement – one drafted by Appellants that was never presented to Appellee or signed by Appellee – that included explicit language regarding calculation of fees on future payments. At that point, the court ruled, stating "[a]nd that's the reason I'm granting your summary judgment and denying [Appellants' motion]." This appeal follows.

First, Appellants argue that the language of the attorney-client contract between the parties unambiguously included language that Appellants would receive a fee based on the gross recovery associated with the Appellee's in-network agreement with BCBS. Appellants further argued that Appellee's payment of $100,000 with respect to work performed on the in-network agreement ratified the parties' understanding that Appellants were entitled to a fee on the in-network recovery, but not as to the final amount of the fee. Appellee, on the other hand, also argues that the language of the agreement is unambiguous, though it reaches the exact opposite conclusion of Appellants – that fees based on the gross recovery of the in-network contract were not contemplated. It further argues that the $100,000 payment made to Appellants was made to settle the dispute. In support,

4

Appellee points to a Rule 1.5(c) statement provided by Appellants, which Appellants were required to provide pursuant to the Rules of Professional Conduct (hereinafter "RPC").[4] Appellants therein noted the $100,000 payment made by Appellee. Though the statement contains handwritten notations regarding disputes as to certain fees, there are none with respect to the supposed settlement.

## ANALYSIS

### Standard of Review

We review the district court's judgment granting summary judgment *de novo*. *Richard v. Turner*, 2009-0161, p. 4 (La. App. 4 Cir. 7/1/09), 16 So.3d 523, 525 (citation omitted).

### Contract Interpretation

The law of contract interpretation is well-settled. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd

---

[4] Rule 1.5(c) provides as follows:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by Paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client. A copy or duplicate original of the executed agreement shall be given to the client at the time of execution of the agreement. The contingency fee agreement shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; the litigation and other expenses that are to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. ***Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination***.

(emphasis added).

5

consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Generally, when a written contract is clear and unambiguous, parol evidence may not be admitted to negate or vary its terms." *Pope v. Khalaileh*, 2005-0027, p. 4 (La. App. 4 Cir. 6/1/05), 905 So.2d 1149, 1151 (citation omitted). In *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75, the Supreme Court stated:

> A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.

"[T]he interpretation of unambiguous contractual provisions is a matter of law[.]" *Landis Const. Co. v. St. Bernard Par.*, 2014-0096, p. 5 (La. App. 4 Cir. 10/22/14), 151 So.3d 959, 963.

As noted, the agreement contained language that Appellants would represent Appellee "in all matters pertaining to any and all claims which we have or may have against [BCBS,]" and that they would receive a fee of one-third of the gross recovery. In the event of settlement, Appellants' one-third fee would "be based on a percentage of the value of the case at the time of the settlement[.]" In granting summary judgment in favor of Appellee, the trial court apparently relied on parol evidence – i.e., the unsigned agreement that included more specific language on fees from future payments on the in-network contract – thus implicitly finding the language of the agreement ambiguous.

We also find that the language of the agreement is ambiguous. Appellants rightly point out that they were engaged to represent Appellee in all matters pertaining to the claims against BCBS, and further allege that Appellee agreed to settle with BCBS for a lower lump sum payment based on BCBS' agreement to negotiate an in-network contract in good faith. Appellants allege that they were relieved of their representation after the settlement when it became clear there would be a fee dispute, yet negotiations between Appellee and BCBS continued. Appellee's new counsel ultimately filed suit against BCBS based on its assertion that BCBS failed to negotiate in good faith—a suit that arguably "pertains to" the underlying claim and which Appellants would have pursued had Appellee continued to retain them. On the other hand, Appellee rightly points out that Appellants could not provide representation that pertained to a "claim" it had no right to make – to wit, a lawsuit against BCBS for an in-network contract; instead, obtaining an in-network contract served to facilitate the resolution of its rightful claim to compensation for BCBS' history of systematically underpaying Appellee for its medical services. As the agreement is susceptible to more than one interpretation regarding whether Appellants were entitled to fees on the in-network contract, we cannot say it is unambiguous.

Both Appellants and Appellee reference parol evidence; Appellants rely on Appellee's subsequent lawsuit against BCBS, while Appellee relies on Appellants' unsigned engagement agreement that more precisely sets forth recovery of fees on future payments. "[I]f a court determines as a matter of law that a contract is

ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact. *Carter v. BRMAP*, 591 So.2d 1184, 1188 (La. App. 1 Cir. 1991); *See also LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc.*, 2016-71, p. 7 (La. App. 3 Cir. 8/17/16), 200 So.3d 939, 946. Summary judgment is appropriate only when there is "no genuine issue as to material fact." La. C.C.P. art. 966. Based on the foregoing, genuine issues of material fact exist.

### *Settlement of Fee Dispute*

While the district court resolved summary judgment in favor of Appellee based on the language of the contract and with reference to parol evidence, the parties further disputed whether a settlement had been reached. There is no dispute that Appellee paid Appellants $100,000. This payment is reflected on a statement provided to Appellee by Appellants pursuant to Rule 1.5(c) of the RPC, and references "Attorney's Fees for In Network Contract." However, as a result of Appellee's termination of Appellants' representation, per Rule 1.5(c), Appellants were required to provide the statement – "the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

Appellee suggests the Rule 1.5(c) statement constitutes a compromise. "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071. "A compromise is also made when the

8

claimant of a disputed or unliquidated claim, regardless of the extent of his claim, accepts a payment that the other party tenders with the clearly expressed written condition that acceptance of the payment will extinguish the obligation." La. C.C. art. 3079. "A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached." *Elder v. Elder & Elder Enterprises, Ltd.*, 2006-0703, p. 3 (La. App. 4 Cir. 1/11/07), 948 So.2d 348, 350 (citation omitted). As a contract, a compromise requires offer and acceptance, and must be in writing, though there is no prescribed form. *Id.*, 2006-0703, p. 4, 948 So.2d at 351.

As an initial matter, we are wary of reading a compromise into a document that Appellants were duty-bound to provide per the RPC. Appellants, by successfully obtaining a recovery, were obligated to provide the Rule 1.5(c) statement setting forth sums to be remitted, and necessarily, Appellants included the $100,000 payment already made. Standing alone, this Court cannot find that the Rule 1.5(c) statement evidences a meeting of the minds as to exactly what was intended. Appellee, however, further references a receipt agreement provided by Appellants, indicating remittance "in full and final payment of the above referenced matter." We observe that "it is not necessary that everything intended to be compromised be in one document." *Charbonnet v. Ochsner*, 236 So.2d 86, 88 (La.App. 4 Cir. 1970). However, as noted by Appellants, the "matter" referenced in the receipt is Appellee's action against BCBS. It is not a receipt "in full and final settlement" of the dispute between Appellants and Appellee.

As a contract, we analyze the purported compromise in the same fashion as the agreement between the parties, and we once again conclude that ambiguity exists as to whether there was a "meeting of the minds" that the Rule 1.5(c) statement and receipt agreement constituted a compromise. Once again, parol evidence is referenced, which the fact-finder is best suited to consider.

## CONCLSUION

For the foregoing reasons, we reverse the judgment of the district court granting Appellee's motion for summary judgment. We further affirm that portion of the judgment denying Appellants' motion for partial summary judgment and remand for further proceedings.

**REVERSED IN PART,<br>AFFIRMED IN PART,<br>AND REMANDED**