| JOHNETTE MARTIN | * | NO. 2025-CA-0231 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| STATE FARM FIRE AND | * | |
| CASUALTY COMPANY, | | FOURTH CIRCUIT |
| AMANDA Z. MARTIN, AND | * | |
| GREGORY F. MARTIN | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 65-718, DIVISION "B"
Honorable Michael D. Clement
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Nakisha Ervin-Knott)

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS**

Johnette L. Martin
ATTORNEY AT LAW
10022 Glen View Avenue
P.O. Box 4064
Baton Rouge, LA 70809

COUNSEL FOR PLAINTIFF/APPELLANT

Marianne S. Pensa
TINA L. SUGGS & ASSOCIATES
3850 North Causeway Boulevard
1700 Lakeway II
Metairie, LA 70002

COUNSEL FOR DEFENDANT/APPELLEE

Leo J. Palazzo
PALAZZO LAW FIRM
732 Behrman Highway, Suites F&G
Gretna, LA 70056

   COUNSEL FOR INTEVENOR/APPELLEE


                         **AFFIRMED**
                    **FEBRUARY 4, 2026**

*DLD*
*NEK*

In this personal injury case, the plaintiff, Johnette Martin, appeals the district court's judgment granting a motion to enforce settlement agreement filed by the defendants, Amanda Z. Martin, Gregory F. Martin, and State Farm Fire and Casualty Company ("State Farm"). For the following reasons, we affirm the judgment of the district court.

**FACTS AND PROCEDURAL HISTORY**

Ms. Martin filed suit for injuries she allegedly sustained when she tripped and fell in her family's kitchen on December 25, 2018. She named as defendants her mother, Amanda Z. Martin (since deceased), her brother, Gregory F. Martin, and their insurer, State Farm.

In February 2023, Ms. Martin retained the Palazzo Law Firm to represent her in the litigation. In April 2024, her counsel sent a document entitled "Acknowledgement of Settlement Authority" ("Acknowledgment"), which Ms. Martin signed on April 9, 2024. The Acknowledgment stated that Ms. Martin granted her attorneys "full authority to negotiate settlement" and "authorize[d]

1

[them] to accept the minimum gross sum of $100,000 as full and final settlement" of all claims arising from her fall.

On May 29, 2024, State Farm extended a settlement offer of $100,000.00 to the Palazzo Law Firm. State Farm's counsel requested written confirmation that Ms. Martin agreed to settle the claim for that amount. In an emailed response, her counsel replied: "Confirmed."

On June 7, 2024, State Farm transmitted settlement checks totaling $100,000.00 and forwarded the Receipt and Release Agreement and Motion to Dismiss for Ms. Martin's signature.[1] However, she refused to sign the settlement documents and rejected the funds. Thereafter, Ms. Martin continued to pursue her medical claims against State Farm, including attempting to remedy unfavorable medical testimony.

State Farm filed a motion to enforce settlement, which the district court granted on January 5, 2025. The district court determined that Ms. Martin had granted her attorneys express authority to accept the settlement by signing the Acknowledgment, and therefore, her attorney's email to State Farm, dated May 29, 2024, constituted a valid and binding compromise. It is from this ruling that Ms. Martin appeals.

**DISCUSSION**

---

[1]State Farm issued one check payable to Appellant and her attorneys in the amount of $95,825.12 and a second check payable to Blue Cross Blue Shield, to satisfy its medical lien, in the amount of $4,174.88.

2

The central issue in this appeal is whether State Farm established through the acknowledgment and attorney email exchange that Ms. Martin clearly and expressly consented to the alleged settlement agreement.

A trial court's ruling on a motion to enforce settlement is a factual determination that is reviewed under the manifest error/clearly wrong standard of review. *Feingerts v. State Farm Mut. Auto. Ins. Co.*, 12-1598, p. 4 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1297 (citations omitted). "This is because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding." *Id.*

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071. "Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it." *Elder v. Elder & Elder Enterprises, Ltd.*, 06-0703, p. 4 (La. App. 4 Cir. 1/11/07), 948 So.2d 348, 351 (citations omitted).

For a compromise to be valid, it must "be made in writing or recited in open court . . ." La. C.C. art. 3072. Electronic writings and electronic signatures satisfy the writing requirement. *See* La. R.S. 9:2607. An exchange of emails can constitute a compromise agreement. *See Reed v. 7631 Burthe St., LLC*, 17-0476, p. 3 (La. App. 4 Cir. 12/28/07), 234 So.3d 1201, 1204. "When two instruments, read together, contain a written compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, they are an

3

enforceable compromise agreement under La. Civ.Code Art. 3071." *DeSoto v. DeSoto*, 96-1079, p. 4 (La. App. 5 Cir. 4/29/97), 694 So.2d 1043, 1045 (citing *Felder v. Georgia. Pac Corp.*, 405 So.2d 521, 524 (La. 1981). Accordingly, when Ms. Martin's former counsel responded "confirmed" via email back to State Farm's offer to settle for $100,000.00, there was a valid compromise on its face.

In Louisiana, it is well settled that a party's counsel of record does not have authority to settle a client's claims without his client's clear and express consent. *See* La. C.C. art. 2997(5); C*oppage v. Transdev Servs., Inc.*, 20-0419, p. 6 (La. App. 4 Cir. 3/19/21), 320 So.3d 1206, 1211 (citations omitted). In the instant case, Ms. Martin provided her attorneys with express authority to settle this matter for $100,000.00 when she signed the Acknowledgement of Settlement Authority, specifically authorizing them to negotiate with State Farm and to accept a sum of $100,000.00 to settle her claims against the defendants in this matter. Accordingly, the Palazzo Law Firm had the express authority to settle Ms. Martin's case for $100,000.00.

We also note that when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. *See* La. C.C. art. 2046. In the instant case, the words used in the communications between the parties were clear and explicit and they lead to no absurd consequences. Therefore, no further interpretation may be made in search of the parties' intent. Accordingly, any extrinsic evidence would be inadmissible to explain the clear and express terms of the compromise agreement.

4

Although Ms. Martin asserts that this case is just like the situation in *McRae v. Ellis*, 632 So. 2d 841 (La. App. 4th Cir. 1994), wherein the Fourth Circuit found that the plaintiff's attorneys did not enter into a valid compromise because the plaintiff had not signed the settlement documents, *McRae* is distinguishable from the instant case. In *McRae*, the plaintiff had signed a document authorizing her attorneys to settle her case for $15,000.00. *McRae*, 632 So. 2d at 842. Her attorneys obtained a settlement offer from Allstate for $20,000.00, but the plaintiff refused to sign the closing documents after the fact. *Id.* The *McRae* court found that there had been no formal, written offer and acceptance to indicate that a compromise had been reached. Specifically, the *McRae* court noted that Allstate had sent a "draft" purporting to be a final settlement, and the draft constituted the formal, written offer. *McRae*, 632 So. 2d at 844. However, neither the plaintiff nor her attorneys signed that draft; thus, there was no written acceptance of the offer, and no compromise. *Id.* Unlike in the *McRae* case, here, we have a formal, written offer (State Farm's email outlining the terms of the settlement) and acceptance (Mr. Savoy's "Confirmed" response email). Thus, the requirements for a compromise are clearly met.

**CONCLUSION**

The record before this Court clearly establishes a valid compromise that was confirmed in writing with Ms. Martin's express authority to settle her case for $100,000.00. Accordingly, the trial court's granting of the defendants' motion to enforce settlement agreement is affirmed.

**AFFIRMED**

5