BANK OF AMERICA, N.A., AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4

VERSUS

LOUIS V. CONERLY AND VIOLA JONES CONERLY

\* NO. 2023-CA-0706

\*

\* COURT OF APPEAL

\*

\* FOURTH CIRCUIT

\*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-06313, DIVISION "J"
Honorable D. Nicole Sheppard,
\* \* \* \* \* \*
**Chief Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Daniel L. Dysart, Judge Nakisha Ervin-Knott)

Remington M. Angelle
Stephen W. Rider
Zelma Murray Frederick
MCGLINCHEY STAFFORD, PLLC
301 Main Street, Suite 1400
Baton Rouge, LA 70801

      COUNSEL FOR PLAINTIFF/APPELLEE

Viola J. Conerly
11301 Morrison Road
New Orleans, LA 70128

      COUNSEL FOR DEFENDANT/APPELLANT, IN PROPER PERSON

**JUDGMENT AFFIRMED**
**MAY 10, 2024**

*TFL*

*DLD*

*NEK*

This matter arises from a dispute to enforce payments on a promissory note secured by a mortgage between Appellant, the Unopened Succession of Louis V. Conerly and Viola Jones Conerly ("the Conerlys"), and Appellee, U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-4 ("U.S. Bank"). U.S. Bank was deemed the holder of the promissory note (the "Note") executed by the Conerlys. The mortgage ("Mortgage") on the Conerlys' residence served as security for the Note.

On appeal, the Conerlys, appearing *in proper person* through Mrs. Conerly,[1] seek review of the trial court's judgment in favor of U.S. Bank, which found the Conerlys had defaulted on the Note and awarded U.S. Bank the total sum of $121,616.85. The judgment also recognized the Mortgage as security to enforce the judgment. The Conerlys contest the validity of their signatures on the Note and the Mortgage documents and claim that the judgment should be set aside

---

[1] Mr. Conerly died during the pendency of the litigation.

1

because U.S. Bank utilized fraudulent and deceptive tactics to procure the judgment.

The trial record shows that U.S. Bank introduced into evidence sufficient proof that the Conerlys duly executed the Note and the Mortgage; the Conerlys were in default for failure to make the required payments; U.S. Bank was the holder in due course of the Note; and proof of the outstanding amounts owed. The record also reveals the Conerlys offered no supporting evidence to prove U.S. Bank committed fraud or engaged in ill practices. Accordingly, finding no manifest error on the part of the trial court, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On December 26, 2003, the Conerlys executed the Note in favor of H&R Block in the principal amount of $141,750.00, with interest at the rate of 7.550%. The Note required the Conerlys to pay monthly installments of $995.99, beginning on February 1, 2004, and continuing thereafter. The Note and its attendant obligations were secured by property bearing the municipal address of 11301 Morrison Road, New Orleans, Louisiana 70128 (the "Property"), which was the Conerlys' residence. H&R Block endorsed and assigned the Note and Mortgage to Option One Mortgage Corporation ("Option One") on October 28, 2004. Said Note was recorded as Instrument No. 797912 (NA#: 2004-63500) in the Orleans Parish Mortgage Records. Option One endorsed the Note in blank, which rendered the Note bearer paper. Subsequent thereto, Sand Canyon Corporation f/k/a Option One ("Sand Canyon") assigned the Note to U.S. Bank.

2

On June 15, 2011, U.S. Bank filed a petition for executory process against the Conerlys alleging that the Note had not been paid since October 1, 2010. In response, the Conerlys filed a Chapter 13 Voluntary Petition for Bankruptcy. The Conerlys' bankruptcy payment plan required payments on the Note. The bankruptcy petition was eventually dismissed on November 14, 2014, due, in part, to the Conerlys' failure to make the agreed upon payments.

Thereafter, the Conerlys filed a Petition for Preliminary Injunction to Arrest Seizure and Sale on December 27, 2017. They alleged that their signatures on the Act of Mortgage in favor of Option One were forgeries. Moreover, they contended that they never knowingly executed a mortgage for $141,750.00, and that U.S. Bank[2] had not followed the procedures for executory process.

The trial court granted the Conerlys' request for injunctive relief, denying U.S. Bank the right to proceed by executory process. The trial court indicated that U.S. Bank had failed to obtain the Conerlys' purported confession of judgment prior to its filing for seizure by executory process. [3]

---

[2] In their petition for preliminary injunction, the Conerlys filed their action against Bank of America, N.A., as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-4. U.S Bank filed a motion on January 10, 2018, to substitute U.S. Bank as the proper party plaintiff. U.S. Bank's motion to substitute was granted by the trial court.

[3] Louisiana Revised Statute 13:4102(A) and (B) state the following:

    A. Whenever the holder of bearer paper, such as a note, bond, or other instrument evidencing an obligation secured by a mortgage or privilege on movable or immovable property, seeks to foreclose by executory process, all requirements for authentic evidence regarding the transfer, assignment, pledge, or negotiation shall be inapplicable, provided that all other requirements for authentic evidence have been satisfied.

Thereafter, the trial court granted U.S. Bank's motion to convert the petition for executory process to an ordinary proceeding. After the conversion, U.S. Bank filed an Amended Petition by Ordinary Process to Collect Amounts Due on Promissory Note and for Recognition of Mortgage ("Amended Petition"). The Conerlys denied the allegations and stated, in part, that "they did not sign documents to create a mortgage on the [P]roperty."

U.S. Bank filed a motion for summary judgment on February 4, 2019. The Conerlys filed a supplemental and amended answer and opposed the summary judgment motion. The Conerlys' opposition maintained that U.S. Bank had failed to prove the total indebtedness owed and had not properly credited the Conerlys with payments made. The trial court denied the motion for summary judgment.

The parties proceeded to trial on the merits on the Amended Petition. Testimony at the hearing included the following:

**Kevin Flannigan**

At the hearing, Kevin Flannigan, a senior loan analyst for Ocwen Financial Corporation ("Ocwen"), testified that Ocwen, also known as PHH Mortgage Corporation ("PHH"), services mortgage loans on behalf of U.S. Bank.[4] As part

---

B.  Whenever the holder of a note, bond, or other instrument evidencing an obligation secured by a mortgage or privilege on movable property seeks to foreclose by executory process, the transfer, assignment, pledge, or negotiation of such document by private act, duly acknowledged in any manner provided by law, shall be deemed to be authentic evidence and in compliance with Code of Civil Procedure Article 2636.

[4] Mr. Flannigan explained that Ocwen merged with U.S. Bank's current servicer—PHH—and Ocwen is the parent company of PHH. He averred that the names of the companies can be used interchangeably; however, the overarching name of the company is PHH.

of his role, Mr. Flannigan confirmed access to records relating to mortgages and loans. Mr. Flannigan stated that Ocwen and PHH (collectively "PHH") kept all the loan records as they relate to the disputed loan at issue, including records provided by previous servicers. Mr. Flannigan identified the loan application displaying the Note's terms. The Note showed an agreement to pay the amount borrowed as $141,750.00; the signatures of the borrowers, Louis V. Conerly and Viola Jones Conerly; 11301 Morrison Road in New Orleans as the Property; the date of the Note as December 26, 2003; H&R Block as the lender; and that the Cornerlys' individual signatures were notarized. Mr. Flannigan averred that the Note's obligation required the borrowers to pay $995.99 per month, beginning February 1, 2004.

Mr. Flannigan confirmed the chain of the assignment of the Note from H&R Block to U.S. Bank and the eventual transfer of the service agreement to PHH. [5] Mr. Flannigan also verified documentation establishing that PHH sent the Conerlys notification of the change in the loan's servicing from Homeward to PHH to their Morrison Road address on February 13, 2013.

Mr. Flannigan testified that the Conerlys' payment transaction history documented the following payments owed through the date of trial: an unpaid principal balance of $55,679.26; interest payments of $38,230.95; overdraft or impound sums of $20,059.84; unpaid late charges of $398.32; a recoverable

---

[5]Mr. Flannigan identified the PHH records showing the assignment and transfer of the Note from H&R Block, the original lender, to Option One to Sand Canyon, and presently, to U.S. Bank. Moreover, Mr. Flannigan identified documentation depicting the transfer of the loan's servicing from Homeward Residential (formerly American Home Mortgage) to PHH.

balance of $7,198.48; and a recording fee of $50.00—all resulting in a total payoff amount of $121,616.85. [6]

On cross-examination, Mr. Flannigan said that he was unaware as to whether a truth-in-lending disclosure form was in the Conerlys' file. He also acknowledged that he did not get personally involved in the actual mortgage servicing process and that he did not attend closings. Mr. Flannigan said that he only knew what was listed in the documents.

**Viola Jones Conerly**

Mrs. Conerly was ninety-years old at the time of her testimony. She recalled that she signed "something" on December 26, 2003. However, Mrs. Conerly maintained that she did not recognize her signature or her husband's signature on the documents for the Mortgage or the Note. Mrs. Conerly had no memory of borrowing $141,000.00 for a loan or a mortgage. She recalled going to a Chalmette notary "for the furniture, not for no house."

On cross-examination, Mrs. Conerly maintained that she had taken out a loan from H&R Block, but the loan "wasn't no mortgage." Mrs. Conerly recollected writing checks and getting money orders for the house, but not for $141,000.00. Mrs. Conerly identified a check from 2016 that she "must have sent" to Ocwen for something Ocwen claimed was owed. She re-asserted the check was for furniture, not her home. During her cross-examination, U.S. Bank offered into evidence checks of $49.00 and $582.80, written in 2013 and 2016 to Owcen.

---

[6] All of U.S. Bank's exhibits as testified to by Mr. Flannigan were introduced into evidence without objection.

Mrs. Conerly said she filed for bankruptcy on the advice of counsel. She testified that the signatures on the bankruptcy documents also did not look like her signature or Mr. Conerly's signature. She had no memory of signing the bankruptcy documents. Mrs. Conerly admitted that she and Mr. Conerly went to bankruptcy court located on Magazine Street with their attorney. When shown documents that listed the mortgage balance on the 1130 [sic] Morrison Road residence, she claimed that she did not know if there was a mortgage because "[they] didn't get any money." In response to further questioning about the mortgage's existence, Mrs. Conerly reiterated that "I don't know because we - - got 6,000 on our furniture from H&R Block. We purchased this house through First Mortgage Homestead in '76. And First Mortgage Homestead went out of business." The following colloquy took place after U.S. Bank's counsel questioned her about the possibility that she simply did not recall that a mortgage was placed on her house.

MRS. CONERLY:

A. I don't - - I remember when First Mortgage went out of [sic] Homestead, they put us over at Option One. Paid Option One $50,000.00 and never heard any more from them.

COUNSEL:

Q. So you made a payment to Option One, that's what you're saying?

MRS. CONERLY:

A. Yeah

COUNSEL:

Q. And how much was it roughly?

MRS. CONERLY:

A. What?

COUNSEL:

Q. How much was the payment to Option One, roughly speaking?

MRS. CONERLY:

A. I think it was 995.

When presented with the bankruptcy documents again, Mrs. Conerly said she did not recall signing the documents.

At the end of Mrs. Conerly's cross-examination, U.S. Bank's counsel admitted all the bankruptcy documents into evidence without objection. The trial court recessed the hearing until May 18, 2023, for closing arguments and a ruling.

**Trial Court's Judgment**

Prior to judgment, the trial court permitted closing arguments.

U.S. Bank argued that Mr. Flannigan's testimony and its exhibits offered into evidence clearly showed that the Conerlys had executed the Note, placed a mortgage on the Property, and were in default for a sum totaling $121,616.85. In opposition, the Conerlys' attorney countered that they had consistently maintained that they never signed mortgage documents to U.S. Bank or any of the previous mortgage holders for $141,750.00. Instead, the Conerlys asserted that their Mortgage was paid off in 1973; that a new mortgage was never executed; and that the Conerlys—who were not well-educated—had been taken advantage of by unscrupulous mortgage companies.

After closing argument, the trial court rendered judgment in favor of U.S. Bank. The judgment provided, in part, the following:

**IT IS ORDERED, ADJUDGED, AND DECREED** that Judgment is rendered in favor of Plaintiff, U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-4 against Defendants, the Unopened Succession of Louis v. Conerly and Viola Jones Conerly, in the principal amount of Fifty-Five Thousand Six Hundred Seventy-Nine and 26/100 ($55,679.26) Dollars, plus interest at the rate 7.55000% per annum from April 1, 2014 until paid; $20,059.84 in escrow/impound overdraft charges; $398.32 in late charges; $50.00 for recording fees; all costs; and reasonable attorney's fees of 25% of all sums due as permitted by the Note and Mortgage.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Mortgage executed by Louis V. Conerly and Viola Jones Conerly on December 26, 2003[,] and recorded as Instrument No. 747527 in the records of Orleans Parish be and is hereby recognized, maintained, and shall secure this Judgment over the following immovable property, in favor of U.S. Bank and its sucessors and assigns securing the amounts due under the Note, as well as, all other indebtedness owed by the Unopened Succession of Louis V. Conerly and Viola Jones Conerly to U.S. Bank, reserving to Plainitff the right to assert the rights and rank granted to it in said Mortgage:

The land referred to in this Commitment is situated in the Parish of Orleas, State of Louisiana, and described as follows:

. . .

The improvements thereon bear the Municipal No. 11301 Morrison Road.

In its reasons for judgment the trial court opined:

What has been provided is evidence that at some point checks were written on an account that was verified that was their account to the plaintiffs in this matter. And I'm not sure totally what happened because I wasn't there, but I can tell you that it hasn't been presented to this Court any handwriting experts or anything like that to tell me that the documents presented by Plaintiffs in this matter were indeed not correct or inaccurate or fraudulent.

And I hope that Mrs. Conerly will be okay and find adequate housing. But I've said from the bench since the date of election that we try our best to do a good job for the people of the state of Louisiana and,

9

specifically, for the people of Orleans Parish, and we try our best to follow the law and research the law.

And so based on Louisiana law, I have to grant the Plaintiff's prayer as requested.

This appeal followed.

## STANDARD OF REVIEW

"A trial court's factual determinations are subject to the manifest error/clearly wrong standard of review, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Lake Air Capital II, LLC v. Perera*, 2015-0037, p. 6 (La. App. 4 Cir. 5/13/15), 172 So.3d 84, 88 (citation omitted). Hence, the issue for the reviewing court is not whether the factfinder was wrong; instead, in order to reverse the trial court's factual findings, the reviewing court must determine whether the factfinder's conclusions were reasonable based on the evidence submitted. *See Nine-O-Five Royal Apartment Hotel, Inc. v. Atkins*, 2014-0325, p. 8 (La. App. 4 Cir. 10/18/14), 151 So.3d 739, 745 (citation omitted).

## ASSIGNMENTS OF ERROR

The Conerlys' assignments of error contend that the trial court committed the following errors: (1) manifest constitutional error; (2) manifest error; (3) legal error; and (4) reversible error. These errors essentially emanate from the Conerlys' position that the judgment was procured by a myriad of fraud and ill practices, and as such, the judgment is void and mandates reversal.

Before beginning our review of the Conerly's alleged errors, we address U.S. Bank's argument that this Court should deem the Conerlys' assigned errors as abandoned because the Conerlys did not adequately brief their errors with legal argument and factual support, in contravention of Uniform Rules—Courts of

10

Appeal, Rule 2-12.4(B).[7]   However, we take judicial notice of the fact that Mrs. Conerly is over ninety (90) years and appears *pro se* on behalf of the Conerlys. Accordingly, this Court, in the interest of justice, shall exercise its judicial discretion to consider the Conerlys' brief in its entirety.  *See* Uniform Rules— Courts of Appeal, Rule 1-3.[8]

## DISCUSSION

The Conerlys put forth a "prefactory statement" in which they argue that the various service providers and mortgage holders, including U.S. Bank, took advantage of their age and limited education in the negotiation and execution of the Note and the Mortgage and to "cause an increased indebtedness to themselves without their knowledge from $130,000.00 to $141,750.00."

The Conerlys delineate that they filed a complaint with the Consumer Financial Protection Bureau ("CFPB") against Ocwen.  They also allege that the CFPB filed a lawsuit against U.S. Bank and Ocwen for their bad business practices.  To highlight their bad business practices claims, the Conerlys reference a letter to the Louisiana Attorney General's Office wherein they complained that they were the victims of mortgage fraud and elder abuse.[9]   The Conerlys conclude that the judgment violated their property rights secured under the United States' and Louisiana's constitutions; the judgment amounted to fraud and fraud upon the court; and the judgment was achieved through an abuse of process based on illicit

---

[7] Uniform Rules—Courts of Appeal, Rule 2-12(B)(4) provides that  "[a]ll assignments of error shall be briefed.  The court may deem as abandoned any assignment of error or issue for review which has not been briefed."

[8] Uniform Rules—Courts of Appeal, Rule 1-3 states, in part, that "[t]he Courts of Appeal shall review issues that were submitted to the trail court and that are contained in specifications or assignments of error, unless the interest of justice requires otherwise."

[9] The letter to the Louisiana Attorney General's Office was not introduced into the record at trial.

tactics, deceptive practices, falsification of authentic evidence and misrepresentations. As such, the Conerlys add that U.S. Bank's attempt at executory process was void *ab initio* and likewise, the present contested judgment is void.

U.S. Bank's Alleged Fraud

In general, to prevail in an action based on delictual fraud, a party has the burden of proving three elements: (1) a misrepresentation of material fact; (2) the misrepresentation was made with the intent to deceive; (3) and the misrepresentation caused justifiable reliance with resultant injury. *See Renton Properties, LLC v. 213 Upland, LLC*, 2020-133, p. 12 (La. App. 5 Cir. 10/5/20), 304 So.3d 1083, 1093. The burden of proof for a fraud allegation rests on the party who makes the allegation. *See Env't Safety & Health Consulting Servs., Inc. v. Fowler*, 2019-0813, p. 8 (La. App. 4 Cir 3/11/20), 364 So.3d 192, 199 (citation omitted). "Fraud is never presumed and must be proven by a preponderance of the evidence. *Id.*

Here, the Conerlys did not satisfy the first element that a misrepresentation was made. Although the Conerlys make several general allegations of factual misrepresentations against U.S. Bank, they offered no specific, substantive evidence at the hearing to prove these allegations by a preponderance of the evidence. In particular, Mrs. Conerly contested the validity of the Conerlys' signatures on the mortgage loan documents. Louisiana Revised Statute 9:4422 provides, in part, that all signatures on a promissory note secured by mortgage for purposes of foreclosure are presumed to be genuine.[10] In support of this

---

[10] Louisiana Revised Statute 9:4422(1) states the following:

12

presumption, U.S. Bank submitted evidence that the Conerlys' signatures were duly witnessed and notarized. Contrariwise, as noted by the trial court in its reasons for judgment, the Conerlys did not retain a handwriting expert to verify that their signatures were forgeries or to otherwise offer evidence to refute the presumption of their signatures' validity.

Similarly, the Conerlys contended that U.S. Bank and the other mortgagors took advantage of the Conerlys' age and limited education. Louisiana law presumes that a person who signed a contract understood its terms, conditions, and content. *See Walk Haydel & Assocs. Inc. v. Coastal Power Prod. Co.,* 1998-0193, p. 4 (La. App. 4 Cir. 9/30/98), 720 So.2d 372, 374. In the instant matter, the Conerlys provided no expert or lay testimony to substantiate that they lacked capacity at any time involving the negotiation and execution of the Note and Mortgage. Accordingly, upon review, the Conerlys did not meet their burden to prove fraud on the part of U.S. Bank.

"[I] n a suit to enforce a promissory note, the plaintiff need only produce the note in question to establish a *prima facie* case [citation omitted]. The plaintiff makes a *prima facie* case once [it] proves the defendant's signature or the defendant admits [its] signature." *Titus v. Titus*, 2023-0349, 2023 WL 8251804 at *5 (La. App. 4 Cir. 11/29/23), *writ denied*, 2024-00046 (La. 3/5/24). Thereafter, the burden of proof shifts to the defendant to prove any affirmative defenses. *Id.* In contrast to the Conerlys, U.S. Bank satisfied the requisite elements to enforce the Note and recognition of the Mortgage through the un-contradicted testimony of

---

(1) All signatures of the following persons or entities are presumed to be genuine and no further evidence is required of those signatures for the purposes of executory process: endorsers, guarantors, and other persons whose signatures appear on or are affixed to such instrument secured by the mortgage or privilege.

13

Mr. Flannigan, the senior loan analyst, and the uncontested exhibits it offered into evidence. U.S. Bank produced the original Note and the recorded Mortgage, outlined the Note's chain of mortgagor assignments, and documented the Conerlys' payment history. Collectively, the testimony of Mr. Flannigan and the exhibits established the Conerlys' execution of the Note and Mortgage, the Property's assignment as security for the Mortgage, the payments made on the Note, the outstanding balance owed by the Conerlys, and showed that U.S. Bank is the holder and the proper party to enforce the Note. As referenced herein, the Conerlys offered no reliable evidence to contravene the evidence put forth by U.S. Bank.

Fraud on the Court/Abuse of Process

The Conerlys also suggest they were denied due process because the trial court rendered judgment based on a fraud perpetrated on the court by U.S. Bank. Established jurisprudence sets forth two criteria to determine whether a judgment has been rendered through fraud or ill practices and is thus, subject to nullification. The criteria include (1) whether the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and (2) whether enforcement of the judgment would be unconscionable or inequitable. *See Belle Pass Terminal, Inc. v. Jolin, Inc.*, 2001-0149, p. 6 (La. 10/16/01), 800 So.2d 762, 766. The Conerlys meet neither criterion.

We first note that the judgment was rendered through ordinary process— after a trial on the merits. U.S. Bank initially filed its petition for executory process on June 15, 2010. The district court granted the Conerlys' request to deny U.S. Bank the right to executory process. Thereafter, proceedings were stayed because

14

the Conerlys filed for bankruptcy. After the stay was lifted, U.S. Bank's motion for summary judgment was denied.

Our scrutiny of the record shows no deprivation of the Conerlys' legal rights. At every stage of the proceedings, the Conerlys were not only afforded "the opportunity to appear and assert a defense," but they also were afforded and did, in fact, receive the right to a fair and impartial trial. *See Belle Pass Terminal*, 2001-0149, pp. 6-7, 800 So.2d at 766-67. The fairness of the litigation process was underscored by the fact that U.S. Bank received adverse judgments. Additionally, the Conerlys did not substantiate any collusion between U.S. Bank and the trial court. Hence, the Conerlys received due process as the circumstances under which the judgment was reached did not deprive the Conerlys of any legal right.

In reviewing whether the judgment's enforcement would be inequitable or unconscionable, this Court acknowledges the Conerlys' sense of unfairness and heartbreak in facing the loss of their home at this stage of Mrs. Conerly's life for reasons the Conerlys might not comprehend. However, as noted by the trial court, courts are obligated to follow the law. Here, U.S. Bank presented sufficient proof to show the Conerlys executed the Note and the Mortgage and that the payments were past due. On the other hand, the Conerlys were unable to prove their fraud-related allegations. Consequently, the Conerlys' lack of evidence precludes a finding that the judgment's enforcement would be inequitable or unconscionable as a matter of law.

Upon review, the Conerlys' assignments of error are not meritorious, and we find no manifest error in the trial court's judgment.

## DECREE

Based on the foregoing reasons, the trial court's judgment is affirmed.

**JUDGMENT AFFIRMED**